## Case No. 4,620.

FALCONER et al. v. CAMPBELL et al.

[2 McLean, 195.][1]

Circuit Court, D. Michigan. Oct. Term, 1840.

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

Seaman & Frazer, for plaintiffs.
Romeyn & Joy, for defendants.

OPINION OF THE COURT. This action is brought against the directors of the Detroit City Bank to recover from them the amount of a bill of exchange, drawn by the bank, in favor of the plaintiffs, on the Albany City Bank of New York; which was protested for nonpayment. The declaration states that, whereas, heretofore, in the year 1837, books were opened to receive subscriptions of stock for a bank to be called the Detroit City Bank, under the act entitled "An act to organize and regulate banking associations;" which subscriptions were received. That, afterwards, the defendants were elected directors of said Detroit City Bank or banking association, and then and there entered into the duties of their offices respectively, as directors of said bank. That Frederick H. Harris was elected cashier of the bank, and that the defendants, claiming to have complied with all the provisions and requirements of said act of the legislature, and claiming to constitute a body corporate under the name of the Detroit City Bank, at Detroit, commenced doing business as a bank or banking association, under the name aforesaid, and by virtue of said act of the legislature; and continued to do business as a bank until the 10th of February, 1839, when the bank failed.. And the plaintiffs aver that the bank then and there became insolvent, and is still insolvent, and that the defendants continued to act as directors of the bank the whole time aforesaid; and that as directors, they became subject to the provisions of an act to amend "An act entitled 'An act to organize and regulate banking associations, and for other purposes,' " which took effect the 10th January, 1838. And the plaintiffs aver that the 6th December, 1838, the bank, by its cashier, made its bill of exchange, directed to the cashier of the Albany City Bank, of the state of New York, for seven hundred and seventeen dollars and thirty nine cents, to be paid in six months after the date thereof to John Falconer & Co., who indorsed the same to the plaintiffs. That the bill not being paid at maturity was protested, of which due notice was given; and that by force of the statute the defendants became liable to pay, &c. In the second count the plaintiffs allege that "the said Detroit City Bank was organized and transacted business as a banking institution," &c., and the same allegation is contained in the third count, which is a general one.

The defendants filed a general demurrer, and in the argument it is insisted that the declaration, in several particulars, is insufficient. Before these are considered we will examine the principal questions raised by the demurrer. These are: First: Are the associations authorized by the general law corporations? Second: Had the legislature power to pass such a law?

The act in question is entitled "An act to organize and regulate banking associations." The first, second, third, fourth, fifth, sixth and seventh sections, provide in what mode the associations shall be formed. Application is to be made, in writing, to the treasurer and clerk of the county, where the business is to be transacted, stating the amount of capital proposed. Of this application public notice is required to be given. Bond, in the sum of thirty thousand dollars, to be approved of by the treasurer and clerk, must be entered into. The capital stock is limited, and the subscriptions are to be received and apportioned, &c. Ten per cent. on shares subscribed are required to be paid. And when the capital stock of the proposed association shall be subscribed and ten per cent. paid, on notice being given to the stockholders, they are authorized to meet and elect nine directors, a majority of whom are authorized to manage the affairs of the association. They are required to elect one of their number president; and in the 9th section it is provided, that "all such persons as shall become stockholders of any such association, shall, on compliance with

the provisions of the act, constitute a body corporate and politic in fact and in name, and by such name as they shall designate and assume to themselves, &c.; and by such name they and their successors shall and may have continued succession, and shall, in their corporate capacity, be capable of suing and being sued, pleading and being impleaded, &c., in all courts whatsoever; and that they and their successors may have a common seal, and by such name as they shall designate, adopt and assume as aforesaid, shall be in law capable of purchasing, holding and conveying any estate, real or personal," &c. By the 15th section the directors, for the time being, or a majority of them, have power to make bylaws.

The ordinary powers of a corporation are— (1) Perpetual succession; (2) to sue and be sued, and to receive and grant by their corporate name; (3) to purchase and hold lands and chattels; (4) to have a common seal; and (5) to make bylaws. Some of these powers are incident to a corporation, but they are all, generally, expressly given by statute in this country; and these powers are all given in the act under consideration. It expressly provides that the association, authorized by the act, when formed, shall "constitute a body corporate and politic in fact and in name." The act not only gives in terms all the requisites to constitute a corporation, but the body, when formed, is technically designated by it as such. Where, then, is the ground for argument or doubt on the subject? Did not the legislature comprehend the force of the language they used? They have created an artificial being, given to it, in well defined terms, its just proportions and powers, and have called it by its appropriate and technical name. Could the legislature, in language more clear and forcible, have created a corporation? Not a quasi corporation; not a joint stock company, or a limited partnership, but, substantially and technically, a corporation. In illustration of this act of the legislature, it is unnecessary to refer to the mode of creating corporations in England by grant from the crown, or point out the distinction which may exist between a body thus created and one created by a statutory grant; or between an ancient and modern being of this sort. It is enough to know that it is not essential to the character of a corporation, that its powers should be equal to any similar association, either ancient or modern. It is sufficient, if, in its corporate name, it exercises the powers and rights of a natural person in the management of its concerns. We can entertain no doubt that the associations authorized under the above act were intended to be, and are, in fact, corporations.

Had the legislature power to pass this law? This is the great question in the case, and it is fully and fairly presented by the demurrer. The 2d section of the 12th article of the constitution of Michigan declares, that "the legislature shall pass no act of incorporation, unless with the assent of at least two thirds of each house." And it is earnestly, ingeniously and ably contended, that this is an inhibition of the creation of corporations by a general law. That corporate powers, under it, can only be conferred by express enactment in each case. That the majority of two thirds of each house is required to pass the law, whether general or special, cannot be doubted; and although this question must be raised by a special plea and is not now before us, it may not be improper to suggest that this act having the constitutional sanctions required upon its face it is not perceived how, in regard to the majority by which it was passed, it can be distinguished from any other law. To pass an ordinary act a majority of each house is necessary, but to pass an act of incorporation a majority of two thirds is required. Now if, in the latter case, the majority by which the bill was passed may be denied by a plea, why may it not be done in the former? And if the court may go behind the law and canvass the votes by which it was passed, why may they not investigate the qualifications of the members of the legislature?

We are told that the people of Michigan were jealous of monopolies, and, especially, of bank monopolies, and that by the introduction of the above section into their constitution they intended to restrict the powers of the legislature in making such grants. That such was their intention is clear from the language of the section. A law which confers corporate powers can only be passed by a vote of two thirds of the members of each house. But must each corporation be created by a separate act? This is the ground taken in support of the demurrer. No "act of incorporation" shall be passed by the legislature unless with the assent of at least two thirds of each house," are the words of the section. The word "act" is used in the singular, but does it necessarily import that not more than one corporation can be created in the same act? Suppose ten distinct applications were made to the legislature for bank incorporations at the same session, and the legislature were disposed to grant each application, must they pass ten acts of incorporation, or may not the ten corporations be granted in the same act? Would not such a law be within the letter and spirit of the constitution? Of this there would seem to be little doubt. As distinctive a character may be given to each corporation in such an act, as if each were established by a special law. In 1834 an act was passed by the legislative council of the territory of Michigan, entitled "An act to establish branches of the Bank of Michigan, Farmers' and Mechanics' Bank of Michigan, the Bank of the River Raisin." [Sess. Laws, p. 63.] Such acts are common, and it is believed never to have been supposed that the legislative power might not be exercised in this mode. The restriction

in the constitution does not prohibit it. And if this may be done under the constitution, then the construction, that each corporation must be created by a special law, can not be sustained.

This is a question of power, and not of policy. The court may look at the circumstances under which the constitution was adopted, and these may explain, at least to some extent, the objects which its provisions were intended to secure. But whether these objects be wise or politic we can not inquire. The constitution bears the impress of the sovereign will, and it must stand as the paramount law. It regulates and limits the exercise of legislative powers. And if an act of the legislature be clearly repugnant to the constitution, it is of no validity. But to produce this result the repugnancy must be obvious. It must not arise by implication, but by giving to the constitution and the act the full import of their provisions. And if, on this comparison, the provisions of the one are irreconcilable with those of the other, the act must be made to yield. But if the repugnancy be doubtful, and the act may be so construed as to harmonize with the constitution, it must stand. This is due to the legislative construction of the constitution, and is a well established rule of judicial decision. At the time the constitution of Michigan was adopted, in many of the states, and in this territory, it was the ordinary course of legislation to create corporations by a general law. This was the case in Ohio, and in many of the other states. And it can be of no importance whether banking or other associations were thus incorporated. The power was exercised. Does the constitution prohibit the exercise of this power?

It has already been shown that an act which shall establish several banking corporations is not repugnant to the constitution. And this reduces the objections to the law under consideration to two points: First: That a corporation, being a grant, must be made to a person or persons in esse. Second: The indefinite number of banking corporations which, under the law, may be established.

The first objection, on examination, will be found to have but little force. The creation of a corporate existence can never take effect until the association be formed, and the organization completed. Commissioners are generally designated in the act, who are to superintend the opening of the books and receive subscriptions of stock. And when the amount shall be subscribed, and the necessary payments made, the stockholders elect directors who appoint a president and cashier. The organization being completed, existence is given to the artificial being, and its agency commences. It is now in esse, but before this it was not. Vitality is given to it by the voluntary associa-

tion and organization of its members. Had they remained passive the law could have had no effect. In this case, then, the grant of the franchise is not made to a person or persons in esse. The commissioners did not constitute the corporation, nor was the franchise, in any form or degree, vested in them. This is the general mode in which corporations are created, and it has stood the test of time, and of legal scrutiny. No valid objection is perceived to it. In regard to this objection the act under consideration rests upon the same ground as other and more special acts on the same subject. The franchise is not vested in either until the organization be completed, and this depends upon the voluntary association of individuals. In a special act commissioners are named to open the books and receive subscriptions of stock; in the act under consideration the clerk and treasurer of each county are required to perform this duty. They are commissioners for this purpose. And, so far as the grant is concerned, if it be valid under one law it must be so under the other.

We come now to consider the objection that an indefinite number of banking corporations are authorized by the general law, and this, it is supposed, is not only repugnant to the policy, but the express provision of the constitution. It can not be said that this law violates any express provision of the constitution. The extent of the provision referred to is, that no act of incorporation shall be passed except by at least a majority of two thirds of each branch of the legislature. Now, this does not limit the number of corporations which shall be established, nor the number which may be created in one act. The act must be passed by a majority of two thirds, and this is the only express restriction on the subject. If the range of legislative power be restricted beyond this, it must be done by construction. There may be a wide distinction between the policy of a general and a special banking law, but this is not a question for judicial cognizance. Is there such a difference in principle, as to make the one constitutional and the other unconstitutional? This is the inquiry now to be made. As it regards the power of the legislature, it is unquestionable, whether they establish one or fifty banking institutions. The same power which may establish one bank, under the constitution, may establish fifty.

In the general law, as above observed, commissioners are appointed, the county clerk and treasurer, to receive subscriptions of stock the same as in a special act. And the mode of organization, under both acts, is substantially the same. The only difference seems to be that in the special act the number of corporations is limited, whilst under the general act they are indefinite. And here it is contended that the legislature have, in substance, conferred the power to

form corporations by voluntary associations, without exercising that special scrutiny, in each case, as is required by the constitution. But is this a sound and practical view of the case? It may be admitted that it derives great force from the disastrous results which have been realized under this law; but these have nothing to do with the question of power under consideration. Suppose the results had been as beneficial as they have been injurious, how changed would have been the argument. But the question remains unaffected by the good or evil which resulted from the law.

The legislature, in the exercise of their discretion, seem to have concluded, that, by requiring securities on real estate, and subjecting the directors to certain liabilities, it would be good policy to multiply the banking institutions of the state. And in order to avoid the charge of monopoly, which had been so liberally applied to banking incorporations by a general law, they held out to the community at large equal privileges in forming such associations. The act which thus sanctions an indefinite number of banks, depending upon voluntary associations, is passed by the requisite majority of two thirds of both houses of the legislature. Now, what is the practical operation of this law? It, in effect, declares that the clerk and treasurer of each county in the state shall be authorized to open books and receive subscriptions of stock, and when the associations, thus formed, shall become organized, they shall be in fact and in name bodies corporate and politic. The law acts as directly upon associations thus formed, as if it had been passed expressly to incorporate each association. It is special to each. And the difference between a general and a special law of this character, in this respect, seems to be that the one is passed on the special application of a few individuals, whilst the other is enacted under the influence of a general policy. But the question of power is the same. May not the legislature determine the number of banks that shall be established? This will not be controverted. And if they may do this, may they not, under the constitution, pass an act, by a majority of two thirds in each house, to establish voluntary associations without limiting their number? Suppose the general law had limited the number of banks, to be established under it, to ten, could their power to pass the law have been doubted? They throw around the institutions, thus to be organized, all the guards and checks which they deem necessary for the public interest. The law acts as directly and distinctly upon each association as if it had been the only one established under it. And, in passing the law, the legislature exercise the same scrutiny as if they were about to incorporate only one bank. Such a law would be within the letter and the spirit of the constitution. And if the legislature may do this, may they

not fix on a greater number of banks than ten; or, may they not, in the exercise of their discretion, authorize the establishment of an indefinite number? Whether the number shall be large or small is a question of policy and not of constitutional power. If a large or indefinite number of corporations may be created in the same act, under as salutary restrictions as the creation of one, is the policy of the constitution disregarded?

It is contended that the general law throws off the restraints imposed by the constitution. But is this so? There is not a restriction in the exercise of corporate powers, which can be imposed by a special law, that may not be imposed under a general law. And the power of the legislature acts as directly in the one case as in the other. In the general law, then, there is no disregard of the restraints of the constitution. Having the power to establish more than one corporation in the same act, the legislature may establish many, or an indefinite number. The number, whether indefinite or limited, does not render the law repugnant to the constitution. If it has been passed by the constitutional majority, it is within the restriction. By the thirty sixth section of this law the legislature reserve "the power to alter or amend the act, and to dissolve any association to be incorporated under its provisions, by a vote of two thirds of each house." Here is a power not usually reserved in granting franchises. And it would seem that, so far as the policy of the law may be considered, this reservation of power gives to the legislature as salutary a control over these grants, for the public good, as would have been exercised in acting on special applications for charters. And the presumption is, that if the general law had not passed, the number of banks, under special laws, would have been as great, and the consequences not less disastrous. The evil is not to be found in the constitution, or in the construction of the constitution, but in the elements of which the government is composed. The true remedy is found in the sober reflection, experience and intelligence of the community.

In the argument reliance was placed in the decision of the case of Thomas v. Dakin [22 Wend. 9], in the court of errors of New York. That case involved the constitutionality of "An act to authorize the business of banking." The constitution of New York declares "the assent of two thirds of the members elected to each branch of the legislature shall be requisite to every bill, creating, continuing, altering, or renewing, any body politic or corporate;" and the question was, whether the associations formed under the act were corporations; and, if they were, whether the state had power to create them by a general law; and, also, whether the law must not have been passed by a majority of two thirds. The opinion of the high court of errors has not been published, but it is understood that they decided the associations

were limited partnerships and not corporations. In the same case, however, the supreme court decided that the associations, under the law, were corporations, and that the legislature, by the requisite majority, could pass the law. The argument in that case was, as in the case under consideration, that the legislature could only create corporations by a special law in each case. On a comparison of the respective constitutional provisions, it will be found, that the language of the restriction in the constitution of New York is more specific and individual than the provision in the constitution of Michigan. The former uses the words, in reference to the majority required, "every bill," "creating, continuing, altering, or renewing, any body politic or corporate," whilst the terms used in the latter are general. The decision, therefore, of the supreme court of New York, by a majority of the judges, that a general law, creating corporations, is constitutional in that state, is a strong authority in the present case.

There is another view of which this case is susceptible, and which would seem to be conclusive. The first general law was passed the 15th March, 1837, and, under the reserved power to alter or amend that act, the legislature, the 30th December, 1837, passed an amendatory law, which took effect the 10th of January, 1838. This amendment, with some modifications, covers the whole ground of the former law. It provides for the formation of banking associations, and, when organized, declares them to be corporations. To pass this amendment the constitutional majority was necessary. At the time this amendment was passed the Detroit City Bank, as appears from the declaration, had been organized and was in operation. And the 36th section of the amendatory act declares that "all banking associations, incorporated under the act to which that was an amendment, shall, within ninety days from the passage of that act, give the security required by the sixth section of that act, and shall, in all other respects, be subject to, and governed by, the provisions of that act." The sixth section required "bonds and mortgages to be given to the auditor general, for the use of the state, as collateral security for the final payment of all debts and liabilities of such associations." Here is a direct legislative sanction of the incorporation of the Detroit City Bank, and all other banking associations under the first law. And the provisions of the amendatory law are extended expressly to all such incorporated companies. If it were then admitted that under the first act the associations formed were not incorporated, are they not incorporated by the second? Its provisions confer corporate powers, and they apply to associations then subsisting under the former law. This designates these associations with as much certainty as if they had been specially named in the amendatory act; and can there be any doubt that this act would confer corporate powers on these associations if, under the former, they had not received them? As it regards banking associations then subsisting, it could not be contended that the legislature disregarded the restrictions of the constitution, by creating or authorizing an indefinite number of banks. These institutions were in operation, they were known, and expressly sanctioned, and provisions, which conferred corporate powers, were made to embrace them. Thus it would seem, that, in a double aspect, the institution, in question, may claim corporate powers.

We will now examine the objections to the declaration. There can be no doubt that, if the plaintiffs are entitled to recover, they may recover in the action of debt. This is not controverted. But it is objected that the averment of the existence of the bank, as a corporation, is not positive, but by way of recital, as, whereas, &c. This objection might be urged in an action of tort, but it does not lie where the action is founded on contract. 2 Chit. Pl. 236; 1 Chit. Pl. (Ed. 1837) 286, 380; Ring v. Roxbrough, 2 Cromp. & J. 418, 2 Tyrw. 468. Indeed, it has been doubted in some modern decisions, whether this objection, even in actions of tort, should be sustained, when raised by a special demurrer.

The second objection is, that there is no averment that the defendants became a body politic and corporate. There is no formal averment of this fact, but we think the facts, stated in the declaration, show that, under the law, the directors and stockholders of the Detroit City Bank did become a body corporate and politic. And, from such statement, the inference of law arises without a special averment. It was unnecessary to aver that the law was passed by the constitutional majority in each house. That question is not now before us.

It is again objected that there is no averment that the defendants were elected directors, and were duly qualified to act as such. On the part of the defendants, it is contended, that this is essential. That the defendants are charged to have incurred a penalty under the law, which the plaintiffs seek to recover; and that they must be brought strictly within the law. By the 21st section of the amendatory law, it is declared that, "for all debts of such banking association, the directors thereof, if such association shall become insolvent, in the first place, shall be liable in their individual capacity, to the full amount which such insolvent association may be indebted." And it is under this provision the present action has been brought.

It is contended by the plaintiffs' counsel that the defendants are estopped to deny that they acted as directors. The doctrine of estoppel would seem to have no application in the present state of the pleadings. If by plea they should deny their own au-

thority to act, after having acted as directors, the question whether they were not estopped might arise. But the question is now on the sufficiency of the declaration, and it is clear that the plaintiffs must show every thing material to the maintenance of their action. After stating that subscriptions were received, &c., the declaration alleges that the defendants were elected directors, and that they entered into the duties of their offices respectively. That they continued to act as directors until the bank became insolvent. And the plaintiffs aver that the defendants, as directors, became liable to pay their demand, under the amendatory act. The protest of the bill is, also, averred, and that due notice was given. We think that, in this respect the allegations of the declaration are sufficient. They show specifically the grounds of action, in a form sufficiently technical, against the defendants as directors.

It is objected that the provisions of the amendatory act are retrospective, and, therefore, void. That it impairs the obligation of the contract, or is in the nature of an ex post facto law. The bill of exchange, on which the action is brought, bears date the 6th December, 1838, which was long after the amendatory law took effect. And it is difficult to perceive how this law can be considered as impairing the obligation of the contract. Under the first law the directors were made personally responsible for the debts of the institution, should it become insolvent after exhausting its effects. This, though not the express provision of that act, is understood to be the settled construction of it. But under the amendatory law, in the event of insolvency, the directors are made personally responsible in the first instance. If the amendatory law made the defendants liable for a debt, on grounds which existed before its passage, and on which, as the law stood, they were not liable, there would be great force in the objection. It would then appear that the law attempted to create a liability which did not before exist. The legislature may create a remedy for an existing obligation, but they can not, by legislation, create an obligation on a past transaction. And more especially they can not subject an individual to a pecuniary penalty for an act which, when done, involved no responsibility. But as the case now stands this question does not arise. The obligation, if incurred by the defendants, was incurred under the law. Under its provisions, from the declaration, the defendants appear to have acted as directors, and to have incurred the liability, which this action is brought to enforce.

The defendants again object, that it does not appear from the declaration that the demand, for which the action is brought, is subsisting against the bank, but we think this sufficiently appears. The bill of exchange, drawn by the bank, is set out, that it was protested for nonpayment, at maturity, and due notice given to the bank. Here, then, is a liability on the part of the bank, as the drawer of the bill, clearly and technically shown. The declaration avers that, "by force of the statue in such case made and provided, an action has accrued to the plaintiffs, &c., and it is insisted that, as the action is founded on two statutes, the averment should have been by force of the statutes." And 1 Chit. Pl. 406, is cited where it is said, "The words whereby and according to the form of the statute will not suffice when the action is founded on two statutes." Hawk. 71; Com. Dig.. "Action on Statute," H. But Mr. Chitty adds, "Where, however, a statute refers to a former act, which adopts and continues the provisions of it, the declaration should conclude only against the form of the statute." 1 Saund. p. 135, note 3; 2 Saund. p. 377, note 12; 7 East, 516. The action of the plaintiffs is founded on the second and amendatory act, so that it appears the averment is strictly technical. Demurrers withdrawn, and leave to plead, &c.