## SELMA AND TENNESSEE RAIL ROAD COMPANY v. ROUNTREE.

*1. The requisition in the charter of the Selma and Tennessee Rail Road Company,* that " five dollars in cash shall be paid on each share, at the time of subscribing," is not a condition precedent to becoming a "subscriber" in the company. And if instead of exacting the money, the commissioners appointed to receive the subscriptions, take a promissory note for the amount, from a subscriber, he cannot after the company is organized, object that he is not a member of the corporation. The amount may therefore be recovered of him, in an action of assumpsit, by the corporation.

Error to the Circuit Court of Dallas.

Assumpsit on a promissory note, made by the defendant, by which he promised to pay " H. Ferguson, Treasurer," one hundred dollars. The defendant pleaded *non assumpsit*, and two special pleas, which need not be set out, as the same questions were presented, by a motion for instructions to the jury.

The plaintiff proved that the note was executed in payment of the first five per cent. due upon the subscription of the defendant, to the stock of the corporation. That the commissioners did not require the five per cent. to be paid in specie, but took the notes of some of the subscribers in lieu thereof. That the sum of five hundred thousand dollars being subscribed, and

notes and money taken to the amount of twenty-five thousand dollars, constituting the five per cent , the commissioners gave public notice, as the charter required, on the 22d February, 1837, and that nine directors were elected by the stockholders, who proceeded to elect their President. That elections for directors were held annually for several succeeding years, and that the company proceeded to construct the road, and make contracts in relation thereto.

The Court charged the jury, that before there could be any legal organization of the company, or the subscribers could become a body corporate, as much as five hundred thousand dollars must have been subscribed to the capital stock, and five per cent thereon paid in, in gold or silver, or its representative; and that the notes of the subscribers, though received and accepted by the commissioners, in lieu of money, was not such a payment as the charter authorized, and that if the company was not so organized, there could have been no consideration for the note given for the first five per cent. on the stock of the defendant.

The plaintiff asked the Court to charge, that if the word treasurer, in the note, was understood, and meant by the maker, to be, the treasurer of the rail road company, that it was *prima facie* evidence of the organization of the company as to this defendant, which the Court refused to give; to all which the plaintiff excepted, and which he now assigns as error.

EDWARDS, for the plaintiff in error, cited the act of incorporation, Acts of 1836, page 87; 1 Metcalf & P. D. 592, 587; 2 Stewart, 498; 11 Johns. 100; 1 Caine's, 381; Angel & Ames on Cor. 410; 8 S. & R. 219.

GEO. GAYLE, contra.

ORMOND, J.—The question upon this record, depends upon the proper construction of the act creating the corporation, and so far as it is necessary to a proper understanding of this question, a brief synopsis of it is as follows:

The first section declares, that a company shall be established for the purpose of erecting a rail road between certain points named in the act, with a capital of $1,200,000, in shares of one hundred dollars each.

The second section relates to the manner of opening the books for subscription to the stock.

The third section—" The subscription for said stock shall be paid as follows, viz : five dollars on each share at the time of subscribing, and the remainder at such times as the directors hereafter mentioned may appoint: *Provided*, that not more than ten per cent. shall be called in at any one time, and twenty days notice given, in some public newspaper, for the payment of each instalment.

The fourth section requires the commissioners "after the sum of five hundred thousand dollars of said stock has been subscribed," to give public notice for the election of nine directors, who were to proceed to elect a President, &c.

The fifth section declares, " that the subscribers to said capital stock, their successoss, &c. shall be, and hereby are, created a body corporate," &c.

The scheme of this act of incorporation is, that the subscribers of stock shall constitute the corporation; but as by the fourth section they were not permitted to organize themselves, until $500,000 in stock was subscribed, it is, in effect, the grant of a charter, when that sum is subscribed, with permission to increase the stock to $1,200,000.

The note upon which this action was brought, was given to the treasurer of the company, for the *five per cent.* which was required to be paid at the time of subscription, and the precise question is, whether the payment of that sum in money, was by the charter made a condition precedent, to any one becoming a " subscriber" in the company.

There can be no doubt, that the Legislature had the power to prescribe the terms, and conditions, upon which the individuals comprising the company, should become invested with the corporate franchise, and our inquiry will be at an end, when we have ascertained the legislative will. The third section of the charter, which is relied on by the defendant's counsel, certainly does not, in terms, require the payment of the five per cent. in money, at the time of subscribing, as a condition precedent to becoming a subscriber. Its object apparently is, to settle definitely when, and at what periods, the whole amount subscribed shall be paid. Five dollars is to be paid at the time of subscribing, and the residue upon the call of the directors;

Selma and Tennessee Rail Road Company v. Rountree.

who, by the proviso, are prohibited from calling for more than ten per cent. at any one time, and required to give twenty days notice, before the payment can be demanded. The obvious design of this section, was to secure the stockholders against improper and unnecessary exactions from the directory ; and is in the nature of a contract, between the stockholders and the directors, as to the time of payment of the entire sum subscribed.

Nor can any such condition arise by implication from the nature and object of the corporation. In the case of a private stock bank, it might be quite reasonable to suppose, that the Legislature would desire to guard the public against imposition, by requiring the stock to be paid in, in money, before the company were permitted to exercise their corporate functions, and accordingly, we find in those charters, different language employed. In the charter of the Huntsville Bank, it is required "that the payment of said subscriptions be made, and *completed* by the subscribers, at the times, and in the manner following, to wit." [Toulmin's Dig. 34, § 3.] In the charter of the Tombeckbee Bank, "the money thus subscribed shall be paid, one eighth part thereof at the time of subscribing, &c. each of which payments shall be made in *specie.*" [Ib. 40.] In that of the Bank of Mobile, "the payment of the said subscriptions shall be made, and *completed,* by the subscribers, at the times and in the manner following, to wit ; one eighth part thereof at the the time of subscribing, &c. each of which payments shall be made in gold or silver, when the directors shall give notice," &c. [Ib. 46, § 3.]

Nothing can be more explicit than these requisitions, or more germain to the matter in hand. But the business of this corporation was not to discount paper, and to circulate its own notes as money, against which there is an express prohibition in the charter ; but to make a road, and there does not appear to be any rational purpose to be attained by such a requisition. As the corporation could not construct the road without money, and would not want the money until the road was to be commenced, and as those having the management of its affairs, were best acquainted with its wants, and necessities, the Legislature very properly left the determination of this question with the company itself.

85

If the construction contended for, be correct, the omission to pay the five per cent. on one share of the $500,000 necessary to be subscribed to enable the company to organize, and exercise its corporate functions, as it would show that the corporation never had a legal existence, would also establish, that all its acts would be invalid. Such consequences as these, it is impossible to suppose that the legislature could have contemplated, as flowing from a direction of the manner in which the stock should be paid.

The fifth section, by which the corporate powers are conferred, declares, that the "subscribers to the capital stock," &c. shall be a body corporate, &c., and the only limitation upon this grant, is to be found in the fourth section, which requires $500,000 to be subscribed before the corporate powers shall be exercised.

Such was the decision of the Supreme Court of New York, in the case of the Union Turnpike Co. v. Jenkins, 1 Caine's Rep. 381, which, in principle, cannot be distinguished from this. This decision, it is true, was afterwards reversed in the Court of Errors of that State, (Caine's Cases in Error, 85,) and that decision, as the supreme law of the State, has been followed ever since. We know, that the Court of Errors of that State, is composed of laymen, as well as judges, and cannot, beyond the limits of the State, be considered a higher authority, than that of the Supreme Court.

The question has also arisen in Pennsylvania—Hibernia Turnpike Company v. Henderson, 8 S. & R. 219. In that case, as in this, the action was for the five per cent. to be paid at the time of subscription, but which had not at that time been exacted. The majority of the Court held, that the payment of the five per cent. was a condition precedent to becoming a subscriber, and that the action could not be maintained. The language of the charter, in that case, is materially different from this, and upon that the Court rely as a principal element of the decision, " Provided, always, that every person offering to subscribe in the said books, shall previously pay to the attending commissioners, the sum of five dollars, for each and every share to be subscribed." This is certainly much stronger than the provision in this charter, and to say the least, affords strong countenance to the view of the majority of the

Court, that the Legislature intended that the payment of the five per cent. on the sum subscribed, should be a condition precedent to the subscription.

In this case, in our opinion, no part of the charter lends any countenance to the supposition, that it was intended by the Legislature, to make the payment of the five per cent. a condition of the subscription; nor, indeed, would such a requisition have been reasonable, or proper, as it was a matter in which the public had no interest, or concern, and which was therefore, with great propriety, left to the determination of the subscribers, who were to constitute the corporation. By agreeing to receive the promissory note of the defendant in error, they waived their right to demand payment in cash, and could not afterwards have objected, that he was not a member of the corporation—and being entitled to the corporate privileges, he is estopped from denying that he is a member of the corporation.

From this conclusion it results, that the Court erred in its charge to the jury, and its judgment is therefore reversed and the cause remanded.