SMITH *vs.* TALLASSEE BRANCH of CENTRAL PLANK-ROAD CO.

[ACTION BY CORPORATION AGAINST DELINQUENT STOCKHOLDER.]

1. *Amendment of complaint.*—In an action by a corporation, the complaint may be amended by the correction of a mistake in setting out the plaintiff's name.

2. *Name of corporation.*—Although a name is necessary to the existence of a corporation, and is generally expressed in the charter, it may nevertheless be acquired by usage and implication.

3. *Construction of act incorporating Central Plank-Road Company.*—Under the act incorporating the Central Plank-Road Company, (Session Acts of 1849–50, p. 268,) the corporate existence of said company could not commence until $50,000 of stock had been subscribed; but the actual payment of $10 on each share is not a condition precedent to the existence of the corporation. The branch roads, however, which the charter authorizes, declaring them "hereby incorporated," are not limited to any amount of stock, but, on accepting the provisions of the act, and organizing under it, thereby acquire a corporate existence.

4. *Notice to stockholders of calls for stock.*—Where the charter of the corporation does not require a written notice of calls for stock, a verbal notice by the secretary, by order of the president, in pursuance of a resolution of the board of directors, is sufficient.

5. *Competency of stockholder as witness for corporation.*—The secretary of a corporation, who was also a stockholder, but transferred all his stock after the institution of the suit, is a competent witness for the corporation, in an action against a delinquent stockholder, although the corporation was indebted at the time he transferred his stock, and continued indebted up to the time of the trial.

6. *Fraudulent management of corporation.*—The fraudulent management of a corporation, or the fact that its operations are inconsistent with the purposes

of its charter or the public interest, although it might authorize proceedings for a forfeiture of its charter, is not available as a defense to a delinquent stockholder, when sued by the corporation.

7. *Parol evidence not admissible to affect written contract.*—A parol agreement, made prior to or contemporaneously with a written subscription for stock in a plank-road company, relative to the manner in which the money should be appropriated, cannot be received to vary the terms of the written contract.

8. *Declarations of president not admissible against corporation.*—The declarations of the president of a plank-road company, relative to the manner in which the money subscribed for the road should be appropriated, are not admissible evidence for a delinquent subscriber for stock, when it is not shown that such declarations influenced the defendant's subscription, or that they were made while the declarant was acting as the agent of the company in receiving subscriptions for stock.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JOHN GILL SHORTER.

THE defendant in this case was summoned "to answer the complaint of the President and Directors of the Tallassee Branch of the Central Plank-Road Company," and the plaintiff was so described in the original complaint. The complaint was afterwards amended, by leave of the court, so as to describe the plaintiff by the name of "The Tallassee Branch of the Central Plank-Road Company"; the defendant objecting to the amendment, and excepting to its allowance.

The action was founded on the defendant's subscription for stock in said plank-road company, which he refused to pay when demanded in pursuance of a resolution of the board of directors. The only plea was the general issue, "in short by consent, with leave for both parties to give in evidence all pertinent matter which would be allowed under any special plea or replication." On the trial, as appears from the bill of exceptions, the plaintiff offered in evidence the charter of said Central Plank-Road Company, which may be found in the Session Acts of 1849–50, on page 268, and the material portions of which are copied in the opinion of the court; and the written subscription for stock in said company, signed by the defendant and others, which was in these words: "We, the subscribers for stock in the branch of the Central Plank-Road Company, do severally and mutually promise

and agree to take and pay for the shares of stock set opposite to our names, to the president and directors of the branch of the Central Plank-Road Company to be organized for the purpose of constructing a plank-road from the Central plank-road, running east towards Tallassee, or the vicinity thereof, or to the 'Tallassee factory, as said company for such branch road may hereafter determine; the same to be paid in such sums, and at such times and places, as the directors of said branch plank-road company may direct; said branch road to be continued to such other point, east of the Tallapoosa river, as may hereafter be determined." The plaintiff also read in evidence to the jury the proceedings of the Central Plank-Road Company, showing their organization under their charter; and the proceedings for the establishment of the Tallassee branch of said road, showing the meeting of stockholders for the purpose of organizing as a company, the adoption of by-laws and a corporate name, the election of directors and other officers, the resolutions of the board of directors calling for payment on subscriptions of stock, &c. The name adopted, by resolution, at the first meeting of the stockholders, was, "The Tallassee Branch of the Central Plank-Road Company"; and by this name the company is always described in the subsequent proceedings.

"The plaintiff then offered one Jordan as a witness, who stated, that he was the secretary of said company; that he was a subscriber to the company for a considerable amount, which he had paid before the institution of this suit; that he had transferred his stock in said company after the institution of this suit, and more than two years before the trial, in a trade, but without obtaining anything for it; that he had no interest whatever in said suit, and would be neither a gainer nor a loser by its determination; that said company was indebted when he transferred his stock, and was still indebted on the same demands. The defendant objected to the examination of this witness, on the ground of interest, and because of the facts above set forth; but the court held that the witness was competent, and the defendant excepted.

"Said Jordan then testified, that on the 15th July,

1852, he was appointed secretary of said company, and still continued its secretary; that one Felton was the former secretary of the company; that he notified defendant, in July or August, 1852, of the assessment against him for his stock, by order of said company, as shown in the minutes of its proceedings at a meeting held on the 30th June, 1852, and informed defendant that, as specified in said resolution, he could either pay cash, or give his paper in settlement of said assessment; that he had no authority save this, and by the request and authority of the president, to notify defendant of said assessment; and that he was not specially directed by said company to give defendant notice of said assessment. On these facts, which was all the evidence on the point, the defendant objected to the witness proving notice to him of said assessment; but the court overruled the objection, and permitted the witness to prove said notice; and the defendant excepted.

"The plaintiff then proved, that said company, in the spring of 1853, constructed its road for some fifteen miles from said Central road, in Coosa county, in the direction of Tallassee on the Tallapoosa river in Tallapoosa county; that said work was commenced by said company early in 1851; that about three miles of the route between Tallassee and the eastern terminus of said fifteen miles never had been completed; that said company also built a bridge across the Tallapoosa river, as a part of their said road, from which they received tolls until it was destroyed by a freshet, in February, 1852; that said company also planked said road in 1852, from the Tallapoosa river to the top of the hill on each side of said river, and surveyed and cut out the track from said river, on the eastern side, for about five miles, in the direction of Notasulga, a village in Macon county on the eastern side of the river, and marked out a road on the western side of the river, for about three miles, so as to intersect said fifteen miles of the road on said western side; that said company, after the construction of said fifteen miles of their road, collected toll at its gates, and has continued to do so up to the present time, except for about ten months in the year 1853, when one of its bridges was washed away and not replaced. Plain-

tiff introduced evidence, also, tending to show that defendant did not subscribe for his stock in said road, until after the organization of said company, and after it had commenced taking toll at its bridge across the Tallapoosa river, and at its gates on the road; and that defendant subscribed for his stock on the 4th June, 1851. Further, that the city of Wetumka, John G. Winter, and David C. Neal were stockholders and subscribers in said company, and made several payments on their stock before defendant became a subscriber; that said company expended about $2,000 in planking the western and eastern sides of the hills of the Tallapoosa river, from the banks of the river to the top of the hills on each side; that said Winter was invited by some of the people on the eastern side of the river, of whom it was not shown that the defendant was one, to make a speech to them about said road and its prospects, and did make a speech to them at Notasulga in Macon county. The proof was conflicting as to whether a majority of the directors of said company were present when said speech was made. The plaintiff further proved, that defendant stated on oath, about six months before the trial of said cause, that he was not deceived by the speech of said Winter. This was all the evidence adduced by the plaintiff on the trial.

"The defendant then introduced one Culberson as a witness, who testified, that he was present at the public meeting at Notasulga in Macon county, on the 4th June, 1851, when said J. G. Winter made a speech; that said Winter was then a director of said company, and witness was also; that a majority of the directors of said company were at Notasulga on said 4th June, 1851, attending to the business of the company; that they had held a meeting on the morning of that day, but had closed their business as directors of said company before said speech was made; that he could not state whether a majority of the directors of said company were present when said speech was made; that said Winter stated, in said speech, that he had recently seen almost every plank-road in the United States,—that one of them at the north, running parallel with a canal and railroad, outstripped either of

them in the way of dividends,—that the dividends paid by
plank-roads throughout the United States, on an average,
were from twelve and a half to twenty-eight per cent.,—
that said company's road, when finished, would vie with
the Montgomery and West Point railroad, and was ex-
pected to be extended from said Central plank-road, by
Notasulga, to Columbus, Georgia,—that said railroad
company was already so much afraid of said plank road,
that its president threatened, when said plank-road was
finished, to carry passengers along the line of said plank-
road for nothing,—that said plank-road company would
be able to do this also, and to give each passenger a bottle
of wine in the bargain,—and that said plank-road would
improve the value of lands along its route, and enhance
the price of town lots in Notasulga.

"Said witness further stated, that a large concourse of
persons was present when said speech was made, from
about Notasulga and the eastern side of the Tallapoosa
river; that said Winter further said, in the course of his
speech, that said company did not want large subscrip-
tions on that day, but preferred small ones, and wanted
the influence of a number of men, and that said company
already had money enough to build said road to the east-
ern side of the Tallapoosa river; that many persons
immediately after said speech was made, subscribed for
stock in said company; that he could not state whether
defendant was present when said speech was made, nor
when it was that he subscribed for his stock; that witness
was a director in said company at the time said speech
was made, as well as before and afterwards; that the firm
of Barnett, Gilmer & Co., which was composed of Thomas
M. Barnett, William Gilmer, and Frederic Jordan, were
subscribers to the stock of said company for $5,000; that
said firm owned a large factory in the bed of the Talla-
poosa river, and hauled their cotton yarns and other
manufactures, over the planks put down by said company,
from the river to the top of hills on each side of it; and
that all the members of said firm were directors in said
company, from its commencement to the time of this
trial, except that Jordan ceased to be a director on the

sale of his stock as aforesaid. The defendant then offered to prove by this witness, that before he subscribed for stock in said company, David C. Neal, who was the president of said company, informed him that whatever subscriptions for stock were made by persons residing on the eastern side of said river should be appropriated to the building of the road on that side of the river, between its eastern banks and Notasulga; and that said Neal, while acting as the president of said company, and after the conversation above stated, and after witness had subscribed for stock, informed him that the money paid in by subscribers on the eastern side of the river had been appropriated on the western side, on the fifteen miles above described as running towards Tallassee, and that he was about to sell the bonds of said company for the purpose of replacing the money thus misappropriated; that witness objected to this, but could not state whether it was known to the defendant. The court excluded this evidence, on the plaintiff's objection, and the defendant excepted.

"The defendant then introduced another witness, who testified, substantially, to the same facts as Culberson, respecting the details of said Winter's speech; further, that defendant lived near Notasulga when he subscribed for stock in said company, and was present and heard said Winter's speech; that Winter also stated, during said speech, that the money which might be subscribed on the eastern side of said river should be expended on that side of the river, and that the company already had money enough raised to complete the road on the western side, between the river and said Central road; that he (witness) affixed his name to said subscription list immediately preceding the subscription of the defendant, but did not see defendant sign the same, and could not say whether he signed it on the day of said Winter's speech. The defendant then introduced one Ashcraft as a witness, who testified, that he was present on the day when defendant subscribed for his stock; that said subscription was made immediately after the speech of said Winter was delivered, and was procured by said Winter, who had

control of the subscription paper when he subscribed his
name to it; that a majority of the directors of said com-
pany were present when said speech was made; and that
said Winter, in speaking of the plank-roads which were
paying large profits, enumerated the Montgomery plank-
road, which, when completed, was to extend fifty miles
from Montgomery to Greenville in Butler county. The
defendant then proved, that no portion of the ten per
cent. demanded of subscribers to the stock of said com-
pany was paid by any subscriber at the time of subscribing,
but that all the stock subscribed on the western side of
the river, except about $3,000, had been paid in before he
subscribed; and that the sum of $50,000 was not sub-
scribed for the stock of said company at the time when
the president and directors of said company were first
elected. There was no proof, except as stated in this bill
of exceptions, to show that said Winter was the agent of
said company to receive subscriptions for it, when he
made said speech, and when defendant subscribed for his
stock. There was no proof showing that the road of said
company had been planked, from the top of the hill, on
the eastern side of said river, to Notasulga. It was in
proof, also, that said company had retained all the tolls
collected on said road from its commencement, and had
made no dividends; that a bridge had been built by said
company over the Tallapoosa river, where the old bridge
had been washed away, and was under the control of the
said Barnett, Gilmer & Co., who held said bridge and its
profits to reimburse them for moneys advanced by them
in rebuilding it, after which it was to be the property of
said company.

"This was all the evidence in the cause; and upon this
evidence the defendant requested the following written
charges:

"1. That the charter produced and read by the plaintiff
does not authorize the plaintiff to maintain this action,
under either count in the complaint.

"2. That said charter does not give the plaintiff a cor-
porate name; and that, on account of this omission in
said charter, the plaintiff cannot recover.

"3. That said charter does not give plaintiff the authority, by any by-law it could adopt, to clothe itself with a name; and that plaintiff cannot maintain this action in the name set out in either count of the complaint.

"4. That if the proof satisfied them that none of the subscribers for the stock of said company paid in money, or discharged in any other way, the ten dollars per share required by the charter at the time of subscribing for stock, and have not since paid or discharged said ten dollars per share,—then the plaintiff cannot recover.

"5. That if the defendant, at the time of subscribing for stock in said company, did not pay the ten dollars to the commissioners, and has not paid the same at any time since; and that the same, at no time since, has been demanded of him by said company; and that he has in no manner participated in the organization or acts of said company, except to sign his name as a subscriber for stock,—then plaintiff cannot recover.

"6. That plaintiff was bound, under said charter and the pleadings in the cause, to prove that $50,000 was subscribed to the said company before they proceeded to the election of a president and directors of said company; and that if this has not been proved, but, on the contrary, it has been proved that no more than $40,000 was subscribed before said election,—then the plaintiff cannot recover.

"7. That the plaintiff cannot recover, without proving that, before the institution of this suit, a demand was made of defendant for the money assessed against him; and that a simple notice of said assessment, given by the secretary of the company, without a request to pay, will not entitle the plaintiff to recover.

"8. That if the defendant put his name on the subscription book, without paying any part of his subscription, or giving his note therefor, then he did not, by that act, become a stockholder in the Tallassee Branch of the Central Plank-Road Company, and the amount of his subscription cannot be recovered from him in an action of assumpsit.

"9. That if the defendant subscribed for stock in said

company, under the agreement that it was to be applied by the company to the building of their road between the Tallapoosa river and Notasulga; and other persons, who subscribed at the same time with the defendant, paid their money on said subscriptions; and the money thus paid was fraudulently applied by said company to the construction of their road on the west side of the river; and all this was known to the defendant before he was notified of the assessment for which this suit is brought,—then defendant might refuse payment of said assessment to plaintiff, and plaintiff could not recover.

"10. That if said corporation, from its commencement, has been fraudulently managed for the private benefit of some of the individuals who have had charge of it, and not for the general benefit of the company, and without reference to the welfare of the company, then plaintiff cannot recover; and that, to determine this, the jury may look to the whole evidence in the cause, written and oral, and to the relative condition of the parties throughout the whole transaction."

The court refused these charges, and the defendant excepted to each refusal; and he now assigns as error all the rulings of the court, as above stated, to which exceptions were reserved.

JAMES E. BELSER, and HILLIARD & THORINGTON, for the appellant.—1. The amendment of the complaint, by altering the name of the sole plaintiff, was improperly allowed. Leaird v. Moore, 27 Ala. 326; Friend v. Oliver, 27 Ala. 532; Stodder v. Grant & Nickels, 28 Ala. 420.

2. In England, corporations may be brought into existence by prescription, implication, or the express or implied consent of the King; but in this country, they must have a charter and a corporate name.—Bouvier's Institutes, vol. 1, pp. 74–79; 2 Bacon's Abr. 440; Kyd on Corporations, 102; 2 Cranch, 127; 4 Randolph, 359.

3. The $10,000 required by the first section of the charter should have been paid in, or settled in some other manner, at the time of the subscription; or there should have been some participation by the defendant in the

organization of the company, aside from his subscription. 11 Johns. 109 ; 9 Johns. 218 ; 8 Serg. & R. 219 ; 13 Serg. & R. 256 ; 13 Illinois, 516 ; 12 Iredell, 224 ; 7 Ala. 674 ; 5 Ala. 807.

4. The charter requires a subscription of $50,000, preparatory to the organization of the company, and then prescribes the mode of voting. The proof shows that the company organized with a subscription much less in amount. If the second and fourth sections are not construed together, there is no restriction or limitation on the branch roads established under the act, and the fourth section becomes unintelligible and void. The assessment, then, cannot be recovered.—39 Maine, 571.

5. Something more was necessary, to entitle the plaintiff to recover, than the action of the board shown in its proceedings, and a simple notice of the assessment from the secretary, accompanied with a request of payment. That the charter is to be strictly pursued, see 39 Maine, 571.

6. Jordan was an incompetent witness for the plaintiff. The company was in debt when he transferred his stock, and still remained in debt. Moreover, the company was indebted to him, with others, for the construction of a bridge ; and a recovery by the plaintiff in this suit would increase the company's funds, and, consequently, his prospect of getting payment.—Plank-Road Co. v. Webb, 27 Ala. 618.

7. Culberson should have been allowed to testify to the declarations of Neal, to the effect that the subscriptions on the east side of the river should be used and appropriated on that side. These declarations were relevant and admissible ; and tended, in connection with the other facts, to show fraud on the part of the company.

8. The charges requested, relative to the fraudulent conduct and management of the company, ought to have been given. They asserted correct legal propositions, and were justified by the evidence.

CLOPTON & LIGON, *contra.*—1. The amendment of the complaint only corrected a mistake in setting out the

plaintiff's name.—Farrow v. Smith, at the last term; 10 N. H. 124.

2. Although the name of a corporation is usually fixed by its charter, and is essential to its existence; yet a name may be implied from its purposes and character.—1 Salkeld, 191; Angell & Ames on Corporations, 61.

3. The plaintiff's corporate existence and powers are derived from the fourth section of the charter of the Central Plank-Road Company, which does not require any particular amount of stock to be subscribed for a branch road.

4. The payment of ten dollars on each share is not a condition precedent to membership in this corporation.— Railroad Co. v. Roundtree, 7 Ala. 670; 8 Serg. & R. 219.

5. The notice and demand by the secretary were sufficient, and the defendant's refusal to pay, without objecting to the notice, dispensed with the necessity for any further notice.—16 Mass. 102; 4 Wharton, 12.

6. Parol agreements, prior to the subscription, or contemporaneous with it, cannot be received to affect the terms of the written contract.—13 Conn. 173; 34 Maine, 369; 24 Vermont, 465.

7. The witness Jordan, being the secretary of the company, was competent to prove the books of the corporation.—Greenl. Ev. 333. The objection to him being general, the court was not bound to exclude him entirely. Habrouski v. Herbert, 4 Ala. 265. Moreover, the witness was competent under section 2302 of the Code; and if not otherwise competent, was certainly rendered competent by a transfer of his stock.—1 Greenl. Ev. § 383, note 2; Angell & Ames on Corporations, 522.

8. The charter of an existing corporation cannot be declared void or forfeited in a collateral proceeding.—6 Cowen, 23; 16 Serg. & R. 140; 4 Gill & John. 121; 5 N. H. 370; 5 Ala. 805; 16 Ala. 372.

9. In an action by a corporation, it is not necessary, under the general issue, to prove its corporate character. Prince v. Commercial Bank of Columbus, 1 Ala. 241; Savage Man. Co. v. Armstrong, 5 Shep. 34. Besides, the fact that the defendant subscribed for stock after the

organization of the company, and after the adoption of its name, estops him from denying its existence, name, or authority.—10 Ohio, 115.

WALKER, J.—In Stodder v. Grant & Nickels, 28 Ala. 416 ; Leaird v. Moore, 27 Ala. 326, and Friend v. Oliver, 27 Ala. 532, it is decided, that the circuit court cannot allow the amendment of a complaint, by striking out the only two parties plaintiffs, or a sole plaintiff on the record, and inserting another and distinct name as plaintiff. These decisions are placed upon the ground, that when the name of the sole plaintiff, or the names of all the plaintiffs, are stricken out, there is no actor left, and then there is, in the language of those decisions, "no case,"— "the case is at an end."

The question in this case is distinguishable from the question in those three cases, in this, that here the name of the plaintiff was not stricken out, leaving the case in the anomalous condition of a suit without an actor ; but the words originally employed in the complaint, descriptive of the artificial personage suing, from their intrinsic import pointed to and designated the same corporation, the name of which remained after an erasure of some of those words.

In the Mayor and Burgesses of Stafford v. Bolton, 1 Bos. & Pul., it was held, that the declaring by a corporation, whose true name was, "the Mayor and Burgesses of the Borough of Stafford *in the County of Stafford*," by the name of "The Mayor and Burgesses of the Borough of Stafford," was a defect available by plea in abatement, and not by nonsuit, or plea in bar. · This case draws the distinction between the mere *misnomer* of a corporation, and the suing by a person altogether different, or not *in rerum natura*.—See, also, Burnham v. Bank, 5 N. H. 446; Marine Bank of Balt. v. Biays, 4 Har. & J. (Md.) R. 338; Ang. & Am. on Cor. (5th edition,) 710, § 650.

In Doe v. Miller, 1 Barn. & Ald. 699, it was decided, that there was no variance, where an ejectment was brought upon the demise of "the Mayor, Aldermen, capital Burgesses, and Commonalty of the *Borough*

Smith v. Plank-Road Co.

*town of Malden*"; the name of the corporation being "the Mayor, Aldermen, capital Burgesses, and Comomnalty of *Malden.*" It is remarked in the Newport Mech. Man. Co. v. Starbird, 10 N. H. 123, that the name of a natural person is different from that of a corporation, in this, that the alteration or transposition of a word in the former usually makes an entirely different name, while the name of the latter frequently consists of several descriptive words, and the transposition of them, or an interpolation or omission or alteration of some of them, may make no essential difference in the case. In that case, a note, payable to "*The President, Directors and Company of* the Newport Mechanics' Manufacturing Company," was held recoverable in an action by the "Newport Manufacturing Company."

While it must be conceded, that more strictness as to the name of the corporation is required in pleading, than in contracts and conveyances to which it is a party, (Angell & Ames on Corporations, 5th ed., § 101,) and while we do not now commit ourselves to all the positions of the several cases cited above ; yet it is certain, that the authorities adduced establish the conclusion, that there is a well-marked distinction between a misnomer, which incorrectly *names* a corporation, but correctly describes it, and the statement in the pleading of an entirely different party. This conclusion being attained, the question of amendment in this case is stripped of embarrassment by the three decisions above quoted from 28th and 27th Ala. which we fully approve. Under our statute of amendments, we think the amendment was properly allowed by the circuit court.—Code, § 2403; Crimm's Adm'rs v. Crawford, 29 Ala. 623; Reid v. Scott, at the present term.

This opinion is fully sustained by the decisions in the cases of Brittain v. Newland, 2 Dev. & Bat. (N. C.) 363; Bullard v. P. D. & C. of the Nan. Bk., 5 Mass. 99; Sherman v. P. of Conn. Riv. Bridge, 11 Mass. 338. In the first of those cases, it was decided, that the defect was amendable, where the suit was in the name of the President and Directors of the Buncombe Turnpike Company, instead of the Buncombe Turnpike Company. In the

other two cases, an amendment similar to the one in this case was allowed.

If the plaintiff have any corporate existence, it is derived from the 4th section of the act of 30th January, 1850, *providing for* the incorporation of the Central Plank-Road Company.—Pamphlet Acts '49–'50, p. 268. This act authorizes the incorporation of a company, for the construction of a plank-road from Wetumpka to Gunter's Landing, or some other point on the Tennessee river. So much of the 4th section as it is necessary to copy in this opinion, is in the following words: "Any individual, or association, may establish branch plank-roads, running into, and connecting with said central plank-road, which branches may be governed by the respective stockholders thereof; and said stockholders for building branches to said central plank-road may become, and hereby are, incorporated *under the provisions of this act*."

It is contended, that the bestowment of a name by the charter of a corporation is indispensable to its creation; and that the plaintiff has no corporate existence, because no name is provided in the statute. Names are necessary to the existence of corporations. It is "the very being of the constitution"; "the knot of their combination, without which they could not do their corporate acts; for it is nobody to plead and be impleaded, to take and give, until it hath gotten a name."—2 Bacon's Abr., *Corporation*, (C). But the authorities clearly show, that although the name is usually given by the charter, it is not indispensable that it should be so given. It is said in Wilcock on Corporations, 34, that every corporation has at least one name by which it may be identified; this may be either derived from *usage*, or conferred upon it by the statute or charter of creation. In an anonymous case in 1st Salkeld, 191, we find the following: "My Lord Coke says, that a corporation must have a name; but that must be understood to be either expressed in the patent, or implied in the nature of the thing; as if the king should incorporate the inhabitants of Dale, with power to choose a mayor annually, yet it is a good corporation by the name of mayor and commonalty. So the city of Norwich is incor-

porated to be a mayor and sheriffs by the charter of Henry IV, and are called mayor, sheriffs, and commonalty."

Where individuals are authorized to associate themselves together, and, organizing as a corporation under a general law, give themselves a name, the existence of the corporation has been maintained.—Falconer v. Campbell, 2 McLean, 195–198 ; see, also, Minot v. Curtis, 7 Mass. 447.

The charter provides for the establishment of branches to the Central plank-road, and so designates them in the 13th as well as the 4th section above copied. The charter also clearly contemplates the establishment of more branches than one; and thus arises the propriety of distinguishing the different branches by a variation in the names. A most appropriate mode of accomplishing the object is by reference to some noted point towards which the branch leads. Tallassee, or its vicinity, is one of the points had in view in the organization of this company. It is shown by the record of the proceedings of the corporation, copied into the bill of exceptions, that it has used from the commencement the name of the Tallassee Branch of the Central Plank-Road Company. This is the name, which would naturally be given to it, by implication from the charter, and the route of the road. Without determining the effect of implication or usage, in a case where one existed without the other, we decide that the plaintiff has, by implication and usage, the name of the Tallassee Branch of the Central Plank-Road Company, and that the complaint, as amended, is in the proper name.

The first section of the charter appoints commissioners to receive subscriptions of stock in the Central Plank-Road Company, and requires the payment to them, at the time of subscribing, of ten dollars on each share. The second section provides, that when fifty thousand dollars have been subscribed, directors may be elected in pursuance to a prescribed notice; and, in the words of the statute, "upon the happening of said election, said subscribers shall be, and are hereby declared to be, a body politic and corporate, in deed and in law." The corporate existence of the Central plank-road could not commence until the fifty thousand dollars of stock had been subscribed; but

43

the actual payment of the ten dollars on each share is not, like the subscription of stock, made a condition precedent to the incorporation.—Selma & Tenn. R. R. Co. v. Rountree, 7 Ala. 670. We decide, however, that the legislature did not intend to prescribe the same condition precedent to the corporate existence of the branch roads, which is prescribed as to the existence of the Central Plank-Road Company. A different construction would do violence to the fourth section. That section says, that the stockholders for building the branches *are hereby incorporated* under the provisions of this act." No condition precedent is here set forth. These words, of themselves, imply an authority to make an organization, which having been formed under the act, and having accepted the provisions made available by it, gives legal life to the artificial being.—Falconer v. Campbell, *supra*. Besides, a construction which would prescribe the same amount of stock as a condition precedent to the existence of the respective branch roads, of undetermined length, location and cost, as to the main trunk, designed to extend from Wetumpka to the Tennessee river, would be most unreasonable. Notwithstanding the branch roads are incorporated "under the provisions" of the act, it does not follow that all of those provisions must apply to them; indeed, several of them are not susceptible of such application.

The defendant's contract bound him to pay his subscription, when required by the directors of the company. The directors required the payment, and the defendant was notified of the requisition. It was then his duty to pay; and omitting to do so, he was liable to suit without further demand. We think the verbal notification by the secretary, under the order of the president of the company, was sufficient. The charter does not require a written notice.

The witness Jordan had parted with his stock in the company before he became a witness. We cannot perceive how the judgment in this case could be evidence for him in any other suit, to which he might be a party; and

we therefore think he was a competent witness.—Code, § 2302.

If the corporation was fraudulently conducted, and its operations were inconsistent with the public interest, or with the purposes of the charter, it might be the ground of a direct proceeding against it, but is not available as a defense in this case.—Angell & Ames on Corporations, 888, § 777; Rives v. South Plank-Road Co. at last term.

It was certainly incompetent for the defendant, to vary the written contract by proof of an antecedent or cotemporaneous parol agreement, that the money subscribed should be appropriated to the construction of a particular part of the road.

The declarations of David C. Neal, the president of the road, made to the defendant before he subscribed to the capital stock of the company, as to the manner in which money subscribed by the inhabitants of a particular locality should be appropriated, were not, in our judgment, admissible under the circumstances stated in the bill of exceptions. Declarations of a similar character, made by the president and a director of a plank-road company, were held admissible, in the case of Rives v. The South Plank-Road Company, at the last term, for the purpose of showing fraud in the procurement of the subscription of stock. That decision was placed upon the ground, that the evidence conduced to show that the declarations were made at the time when the subscription was made, and that those who made them were acting as the agents of the company in obtaining subscriptions of stock. There is no such evidence here, and no evidence of Neal's authority to make representations to procure stock; and we must hold the declarations inadmissible. A corporation is not bound by the declarations of its officers, unless made when acting for it, and about the business which they are transacting for it.

Upon the same ground, all the other declarations of David C. Neal, offered in evidence, were properly excluded.

The 9th charge asked does not raise the question of the procurement of stock by fraudulent representations, but the question of the application of the money paid in by

other stockholders in violation of a verbal agreement cotemporaneous with the written agreement, or antecedent to it, and in conflict with it. The charge was, therefore, properly refused.

There is no error in the record, and the judgment of the court below is affirmed.