Storks, O. J.
The alteration of the amount at which the plaintiffs were assessed in the abstract of the town-list was, if we suppose the abstract to be a valid instrument, an act unauthorized by law. But it does not follow that it was a subject of legal redress. It is not true that every unlawful act is the violation of some individual’s personal right, although it may tend to affect his interests, or practically injures him. Sometimes, although an act is morally base, and is designed and operates to work another’s prejudice, as where a person traduces his neighbor with words not actionable and the latter is made ill thereby, the effect is said not to be the natural and probable consequence of the misfeasance, and no legal injury is committed. More often such misconduct fails of coming up to the standard of a legal injury, because, although unlawful in a general sense, injurious in a practical point of view, and clearly against good morals, there is no infraction of what the law holds to be personal rights. We say, familiarly, that a party has a right to a true return on his writ, a right that his name shall not be forged, that a highway which he uses shall not be incumbered, that his character for honesty shall not be assailed, that an informal process shall not issue against him ; but a mere false return, without pecuniary consequences, as has been decided in Connecticut *496 and elsewhere, for the false signature of a promissory note by another with one’s own name, for the heaping of rubbish in a street where one is accustomed to pass, for calling one a rogue, and for the delivery of a void process against one for [ *608 j service to an officer, *no action will lie, unless pecuniary loss ensues. Until the loss occurs no legal right is assailed. These moral rights, so to call them, which are illustrated above, are not recognized in law as absolute in individuals, like the right to the performance of an agreement, but only as the foundation of certain artificial rights which the law creates out of them. It is when the personal, beneficial, practical enjoyment of them is interfered with, that the law declares that an injurjr has been inflicted. If the creditor can not show any possible disadvantage to be consequent upon the failure of an officer to arrest his debtor on mesne process, if a party whose name is forged is never called upon to pay the forged security, if one does not stumble over or is not delayed by a nuisance in the highway, if pecuniary credit is unaffected when one is styled a rogue, or if a bad writ is never in fact served, the practical benefit to the individual of the rights referred to is not abridged by the wrongdoer. No injury, therefore, in legal contemplation, has been committed.
In the present case, it will not be pretended that any action could have been sustained against the defendant for the mere alteration of the abstract. It was not the plaintiff’s property. As in the case of the forged note, their only right was'the right to be compelled to pay no more than they were lawfully bound to pay. If they should be forced by the act of the defendant to pay excessive taxes, then, for the first time, their legal right would be touched. If this result had ensued, I should agree with my brethren, that the defendant ought to be held liable. But just here occurs the difficulty. I am unable to see that the unlawful seizure of the plaintiffs’ property, and the exaction of the unjust tax by its detention, were produced by the alteration. If, notwithstanding the alteration, the abstract had still remained an effective instrument, and, like a regular writ commanding an excessive attachment, had by its own force warranted and required the unjust levy, or if, by any deceit or concealment, (which, as should be specially noted, is not alleged,) an officer was caused or induced to make an excessive distress, the defendant would have been responsible, in the first instance, [ *609 ] as for an abuse *of legal process, for his malice; in the second, as for a false representation, for his fraud. But here the declaration alleges what can not be true, that the alteration, which invalidated and made illegal and inoperative in *497 law the abstract of the list as against the plaintiffs, caused the excessive distress. A legal nullity Can not draw after it legal consequences. This principle is clearly set forth by Chief Justice Abbott, in Owen v. Legh, 3 Barn. & Ald., 470. The void assessment imposed no obligation on the plaintiffs to pay the tax. The seizure of their property to enforce it was a naked trespass, deriving no force from the assessment. It might have been made without it, with just as much show and substance of legal force and authority, as with it. I am not prepared to sanction the doctrine that a party can plead that he is compelled to do an act by a legal nullity. For instance, if one pays a note to which his name is fictitiously signed, or if, in the present case, the plaintiffs had paid this excessive tax without a distress, and having full knowledge of its illegality, it would hardly seem well to justify individuals in thus voluntarily exposing and submitting themselves to a wrong, wdth a view to seeking redress from the maker of the spurious instrument. On the contrary, their conduct would seem much more like a ratification of the wrong itself and a validation of the instrument. So, if they should make such an uncalled-for payment through ignoi-ance of law, supposing themselves compelled to do it, they would, for necessary and familiar reasons, be regarded as acting voluntarily, and sanctioning the act of the tort feasor. On the other hand, if they should pay through ignorance of fact, induced by the fraudulent act of the wrong doer, they could of course, as already stated, justly aver that they were caused, not by the spurious paper, but by his fraud, to suffer the injury, and so hold him accountable.
The opposite view to that thus suggested was carried to an extreme in overruling the defendant’s offer to show that in fact the levy was not caused by the void assessment, but, on the contrary, was the deliberate act of the selectmen, fully cognizzant of the facts of the case, and therefore cognizant *also (as the law supposes every body to be,) of the [ *610 ] legal infirmity of such an assessment. The selectmen had just as much right, authority, and inducement, in point of law, to direct the excessive distress without the altered assessment as with it. Is it possible that they were caused by it to abet the trespass on the plaintiff’s goods, or that the officer, who was equally bound to know that his process was void on its face, was caused by it to make his illegal seizure ?
After these remarks it is hardly necessary to give reasons for the opinion, that, even if the defendant did cause the injury which the plaintiffs have suffered, their remedy was trespass, and not case. Regarding the pretended process as a nullity in *498 law, the sole wrong which the plaintiffs can complain of is the taking of their property, and, if the defendant is to be regarded under the circumstances'as having any agency in the injury, it was a direct agency. No intervening instrumentality was employed. The color of process, which he made use of, was nothing in the eye of the law except an unofficial command or private request to commit a trespass. Hence we find that the authorities uniformly hold that there is a necessary distinction between injuries sustained through the use of void process, and those -inflicted by the abuse of legal process. The direct force, in the latter case, is that of the law and its agents ; the indirect, that of the party who sets the law in motion. In the former, the parties instigating or procuring or issuing the void mandate, are as much principals as the parties executing it. All are combined together in one continuous act of direct injury. They produce it through no intermediate instrument. This point is settled, not only in early English cases, but has been specially applied in the courts of our own country and of our own state, to this very matter of void tax assessments. The selectmen of a town, who made out a rate-bill founded upon a void assessment and caused a warrant to be issued thereon, were held by this court to have committed an immediate injury through the officer who execiited the process, and the remedy was decided to ‘ be tres- [ *611 ] pass. *1 see no good reason for overruling that decision. Thames Manufacturing Company v. Lathrop, 7 Conn., 550.
The remaining ground of dissent from my brethren suggests a topic of a much graver nature.
It is admitted on all sides that the assessment abstract which was altered, was, at the time of its alteration, a void instrument, no better than if it had never been perfected, or signed, or officially lodged at all. The declaration does not allege, and I am not aware that it was claimed, that the defendant ever pretended that the list was returned in time, or was a legal list, or that he practiced any concealment by which any body was induced to believe that it was a legal list. Of course, he was not estopped by his conduct, so far as the pleadings or facts show, from setting up this claim that the abstract was illegal and a nullity. It follows that the alteration of it was an act of no legal account whatever, any more than defacing a counterfeit note. It was not a wrong in law. Upon this hypothesis, ray brethren decide that the validation of the abstract by subsequent legislation, (the statute of 1855,) operated upon the defendant’s previous transactions and converted, them into a legal wrong, subjecting him to the ordinary penalty of a civil tort, the re *499 covery of damages. The statute was designed for the beneficial purpose of so amending an imperfect assessment as to permit lawful taxation to be founded upon it. It is construed as being also intended to convert harmless and nugatory acts of individuals into unlawful injuries. It is believed that no previously adjudged case supports the doctrine that a legislature can create torts out of past transactions.
A well established rule of construction stands in the way of such a doctrine—the rule recognized in the decision of this court already referred to. (Thames Manufacturing Co. v. Lathrop, 7 Conn., 550.) The judges refused to give to an act of the legislature, validating a tax for the purposes of its collection only, such a construction as to affect a suit brought against public functionaries for issuing a tax warrant under the invalid assessment. They said that, “ to a statute explicitly retrospective to a certain extent and for a certain purpose, the *court would not, by construction, give a retrospective [ *612 ] operation to any greater extent or for any other purpose.” It would seem that, if the protection of public officers who had erred in attempting to enforce a void assessment was beyond the purview of legislative intent when the assessment was legalized, it would be still more remote from the legislative purpose, by the validating act to render such officers liable for proceedings, which when committed were obnoxious to no legal penalty and possessed of no legal consequence.
In England, where the so-called constitution of the realm is no obstacle to the omnipotence of parliament, and is therefore only a standard of construction instead of a bar to the operation of statutes, courts steadily refuse to give them a retrospective interpretation, either total or in any partial measure, unless the intent of parliament to legislate retroactively to the full extent of the case in hand is incontrovertible. The rule has no exceptions, unless perhaps when statutes merely regulate the formalities of legal procedure, and is denominated by those learned courts “ a great constitutional principle.”
In this country such a doctrine of interpretation has become imperative, for the reason that the lex legum interposes a barrier against laws clearly retroactive. “ The constitution,” says Chief Justice Mellen, in Kennebec Purchase v. Laboree, 2 Greenl., 275, “secures citizens against the retroactive effect of legislation upon their property.” Can it be questioned that a statute, impressing upon acts done before its enactment the character of legal wrongs with punitive consequences—a statute which, if its sanctions were of a criminal nature, would merit the obnoxious *500 name of ex post facto legislation—is retroactive in tlie language of constitutional law?
In Falconer v. Campbell, 2 McLean, 195, and in a later decision in Alabama approving Judge McLean’s doctrine, (Coosa River Steamboat Co. v. Barclay, 30 Ala., 127,) the principle is declared, that it is not in the power of the legislature to create a cause of action out of an existing transaction, for which there was at the time of its occurence no remedy.
[ *613 j ' *In Massachusetts it was held many years ago, that a person actually a pauper, and therefore entitled to public support under the laws of the commonwealth existing at the time certain supplies were furnished to him, could not be compelled by a subsequent statute to reimburse a town for them. The court refused-to give the act, inasmuch as it was susceptible of a more restricted construction, any such retrospective effect, and denied its validity if such effect was intended. “ No legislator,” says Chief Justice Parker, “ could have entertained the opinion that a citizen, free of debt by the laws of the land, could be made a debtor merely by a legislative act declaring him to be one.” Medford v. Learned, 16 Mass., 215, 217. Can the legislature create a liability, sounding in tort, for injuries previously sustained, when they can not create a debt for benefits received ?
Another instance of refusal by the American judiciary to sanction the creation of a liability out of past transactions, occurred in Maine. Austin v. Stevens, 24 Maine, 520. Compelled to construe a law as intended to make a reversioner liable to compensate a tenant for life for improvements which, according to laws in force at the time when the improvements were made, were annexed at once to the reversionary estate, the court held the statute unconstitutional and void, as creating a liability which before had no existence. Also, in Coffin v. Rich, 45 Maine, 507, the court denied the right of the legislature, if such was its intention in a controverted statute, to make the stockholders of a corporation liable for its pre-existing debts, and pronounced it to be well settled law that there is “ no constitutional power to enact retrospective laws which create personal liabilities.”
In view of these principles, supported by an unvarying course of authority, I can not concur with the coürt in refusing to advise the arrest of this judgment or the granting of a new trial.