### The Swatara Rail-road Company *vs.* F. W. and J. C. Brune.—*December*, 1847.

The defendant, with others, signed an instrument of writing, promising to pay the *President and Managers of the S. and G. S. Rail-road Co.* the sum of $50 for every share of stock set opposite to their respective names, in such manner, &c. as should be determined by the said *P. and M.*, pursuant to an act of the General Assembly of *Pennsylvania.* A verdict was taken for the plaintiff for the value of shares subscribed for by the defendant, subject to the opinion of the Court, upon a statement of facts, with an agreement that the court might make such inferences from the facts, as a jury might. At the time of the subscription it was admitted by the statement, that the committee, who obtained it, represented to the defendant that *T. W. Canal stock* would be taken at par for any subscriptions to the *Rail-road Co.* The defendants resided in *Maryland,* and were ready to pay in Canal stock. *Held,* that an action for money had and received could not be maintained.

A party cannot agree upon a case stated which admits a certain fact, and then insist that the proof of the fact is not competent, as that it was not in writing.

A plaintiff cannot recover in *assumpsit* against his own representation, upon a promise, the inducement to make which was founded upon such representation.

When a fact is admitted, of which written evidence alone was competent, and the admission is silent as to the nature of the proof, the court will not infer that it was verbal, nor that it was not within some one of the exceptions to the general rule.

A plaintiff ought not to disavow the act of his agent, in an action brought to enforce the contract made by such agent.

The courts of the States are the best expounders of the acts of their respective Legislatures.

APPEAL from *Baltimore* County Court.

This was an action of *assumpsit*, filed by consent to September term, 1844, by the appellants against the appellees. The case was tried upon the general issue.

The plaintiffs, at the trial of the above cause, read in evidence the Act of Assembly of the State of *Pennsylvania*, incorporating the plaintiffs, approved the 2d April, 1831, and also the supplements thereto, severally approved the 8th April, 1833, the 1st April, 1836, and the 20th March, 1838, subject, however, to the defendants' exception to their admissibility, for the purpose of making them liable under the subscription of the 10th November, 1840, if they were not legally liable, by reason of said subscription, at the time it was made.

The plaintiffs likewise proved that the charter and several supplements thereto, given in evidence, were accepted by them.

The plaintiffs then read in evidence, from their minute book, certain resolutions, viz:

*Resolved,* That the secretary be authorized to call in the first and second instalments on each share of the capital stock of this *Company*, on or before the last day of July next.

*Resolved,* That the secretary be hereby required to give public notice to the stockholders of this Company, that the third instalment of five dollars on each share will be required to be paid on the 1st September next. The fourth instalment of five dollars on each share, will be required to be paid on the 20th September next. The fifth instalment will be required to be paid on the 20th October next, payable to either of the officers of the *Company*.

*Resolved,* That the secretary be required to give public notice to the stockholders of this *Company,* that the sixth instalment of five dollars on each share, will be required to be paid on the 20th March, 1842. The seventh instalment of five dollars on each share, will be required to be paid on the 1st May next. The eighth instalment of five dollars on each share, will be required to be paid in June next. The ninth instalment of five dollars on each share, will be required to be paid on the 1st July next; and the tenth and last instalment of five dollars on each share, will be required to be paid on the 1st August next, payable to the president or treasurer.

It was agreed that the aforegoing are the resolutions referred to in the case stated as found in the book of minutes, in which it is stated, that said resolutions were passed at regular meetings of the plaintiffs, their president and managers; the first, at a meeting on 23d June, 1841; the second, on 2d August, 1841, and the third, on 2d March, 1842: and to show that calls for the instalments upon the subscriptions of stock were made, and entered on the minutes.

The plaintiffs, then, also read in evidence from a subscription book of the plaintiff, the following writing and signatures thereto:

" *Swatara and Good Spring Creek Rail-road Company, Subscription Book, Nov.* 10, 1840."

"We, whose names are hereunto subscribed, do promise to pay to the president and managers of the *Swatara and Good Spring Creek Rail-road Company,* the sum of fifty dollars for every share of stock set opposite to our respective names, in such manner and proportions, and at such times as shall be determined by the president and managers of the said *Company,* in pursuance of an Act of the General Assembly of this Commonwealth, entitled an Act to incorporate " *The Swatara and Good Spring Creek Rail-road Company.*"

"Witness our hands and seals, this 10th day of November, in the year, 1840."

The style of the *Company,* was changed by an act from the *S. & G. S. C. Rail-road Co.,* to that of the *S. Rail-road Co*

And also proved the signatures of the defendants thereto, by their co-partnership name of *F. W. Brune & Sons.*

The defendants then read in evidence, the following admissions and agreement:

It is admitted as part of the evidence in the above case, that the subscription of the defendants for stock of the plaintiffs, was procured by *William Donaldson*, then and still the president of the plaintiff, and *J. Wagenseller*, then and still the treasurer thereof, who came to *Baltimore* for the purpose of procuring subscriptions to said stock, after having been appointed by the plaintiffs a committee for that purpose. *And at the time the defendants subscription was procured, the said committee represented to the defendants, that Tide Water Canal Stock could be made available by the plaintiffs, and would be taken at par by it in payment of any subscriptions to the stock of the plaintiffs.* And that the defendants made their said subscription, relying upon said representation and promise, they having previously refused subscribing to said *D.* and *W.*, when no such representation and promise were made.

It is also admitted, that the defendants have always had and still have *Tide Water Canal Stock*, which at its par value, is much more than sufficient to pay the amount of the defendants subscription to the plaintiffs, and of which *Tide Water Canal Stock*, they have always been ready and willing, to transfer to the plaintiffs a sufficient quantity at its par value, to pay the amount of the defendants said subscription, and have so stated to the plaintiffs' attorney, whenever called upon for the said subscription; but their application and tender to pay their said subscription in *Tide Water Canal Stock*, which were made by them before suit was brought in this case, have been refused by the plaintiffs.

It is also admitted, that the first personal notice which the defendants had of the claim of the plaintiffs, was the letter of the plaintiffs' attorney, of the 29th of May, 1844, which may be read in evidence.

*Baltimore, May 29th*, 1844.

MESSRS. F. W. BRUNE & SON.

*Gentlemen:*—I am directed by the *Swatara Rail-road Company*, to collect from you, the amount of your subscription to their capital stock for five shares, at $50 each, $250; *to which* I beg leave to call your attention.

Very respectfully, your obedient serv't,

H. P. HEPBURN.

It is admitted in this case, that it appears from the minute book given in evidence, that the first election for officers, took place on the 2d of November, 1840, and that upon the same day the first meeting of the Company was held, when it was resolved, that the president appoint a committee, to prepare by-laws to be submitted to the next meeting; and that at the next meeting, which took place upon the 18th December, 1840, it was resolved, not to accept the by-laws reported by the committee until a future meeting, when a greater number of the board should be present.

That upon the 30th December following, at a meeting of the board, it was resolved to re-commit the by-laws to the committee, to report at the next meeting, and that it does not appear from the minutes that said committee ever reported upon the by-laws re-committed to them, nor does it appear by said book of minutes, that any by-laws were ever adopted by the *Company.*

And it is admitted, that it appears from the minutes that no other resolutions bearing upon this controversy were passed by the plaintiffs.

And proved that the plaintiffs had passed no other by-laws, and had no other minutes of their proceedings, having relation to this controversy, than those contained on the minute book, given in evidence by the plaintiffs.

It was also agreed, that only such parts of such minute book should be inserted in the record to be sent to the Court of Appeals, as should be agreed upon by the counsel of the parties.

The defendants proved that no notice of the calls for instalments upon the stock was given by advertisement, as required by the charter of the plaintiffs. The defendants also proved that the names subscribed in the subscription book given in evidence by the plaintiffs, from the name of *James Hepburn* to the end of said list of names, and including that of the defendants, were of persons residing in the city of *Baltimore*, who all subscribed their names therein in the city of *Baltimore*.

The testimony being closed, a verdict was taken by consent for the plaintiffs, subject to the opinion of the court as to the admissibility of the Act of Assembly, objected to by the defendants, for the reason stated in their objection, and with leave to either party to except to the opinion of the court, on admitting or rejecting the evidence thus objected to, and subject to the opinion of the court upon the whole evidence in the cause as above set forth, (including or rejecting the evidence excepted to, according as the court shall deem it admissible or not) and with power to the court to make such inferences from the facts given in evidence, as a jury would be authorized to make. And if the opinion of the court should be in favor of the plaintiffs, they should enter judgment on the verdict; but if for the defendants, they should set aside said verdict and enter judgment for defendants, with the privilege to either party to appeal from the opinion and judgment of the court, if it should be against him.

The County Court rendered judgment for the defendants, and the plaintiffs appealed to this court.

The cause was argued before DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By BRENT and WILKINS for the appellants,

By BRUNE for the appellees.

MAGRUDER, J., delivered the opinion of this court.

This is an action of assumpsit brought in *Baltimore* County Court by the appellants, and to recover the amount of the sub-

scriptions by the defendants to the company. Upon a verdict taken for the plaintiffs, subject to the opinion of the court, upon a statement of facts, and with an agreement that the court should make such inferences from the facts as the jury might, it was the decision of the court that the plaintiffs were not entitled to recover. We are called upon to decide whether this was a correct decision.

The claim of the plaintiffs is resisted upon various grounds, any of which, if sustained, will justify the judgment of the court below.

The subscription paper, which is the foundation of the action, is in these words : " We whose names are hereunto subscribed, do promise to pay to the president and managers of the *Swatara and Good Spring Rail-road Company*, the sum of $50 for every share of stock set opposite to our respective names, in such manner and proportions, and at such times as shall be determined by the president and managers of the said Company, in pursuance of an act of the General Assembly of this Commonwealth, entitled, an act," &c.

This paper has the signature of the defendants, and opposite to it is written " five shares," to recover the whole amount ($250,) claimed to be due in virtue of their subscription, this suit was instituted.

Among the admissions in the statements of the case, are the following: " The individuals who, at the time of obtaining the said subscriptions, were and still are the president and treasurer of the Company, came to *Baltimore* for the purpose of obtaining subscriptions to the stock, having been appointed a committee for that purpose. At the time the subscription of the defendants was obtained, this committee represented to them that *Tide Water Canal* stock could be made available by the plaintiffs, and would be taken at par in payment of any subscriptions to this Company. It is also admitted that the defendants made their subscription relying on said representation and promise, and further that they had refused to subscribe when no such representation and promise were made." The plaintiffs insist that they are entitled to demand payment of the amount

of subscription and money, and are not bound by the representation and promise of the committee.   The defendants insist that they are not bound to pay, except in *Tide Water Canal* stock, and the suit is brought, not because of any refusal by the defendants to pay the canal stock, (which, it would seem, they were always ready to pay,) but to recover $250, due by them and recoverable in an action for money had and received, or upon an *insimul computassent.*

If the representation and promise which led to this subscription, which induced the defendants to agree to take five shares of this stock, (to be paid " in the *manner,* as well as in the proportions and at the times " to be determined by the president and managers of this Company,) had been made by an individual plaintiff in any suit, it would scarcely be contended that notwithstanding, and indeed, in violation of the promise and representation, parties making them could recover in any such form of action.

It has been said, indeed, that the promise by the defendants is in writing, and this is an attempt by parol proof to contradict and vary the contract.   But it does not appear that if the defendants had been compelled to prove the undertaking and representation, they would have been obliged to resort to parol testimony.   The fact, then, to be proved, is admitted, and admitted, perhaps, because of a knowledge that the defendants could have produced, if it was required, proof to which no such objection could be made.   The evils to be apprehended from the admission of oral testimony to add or vary the written instrument, cannot be urged in this case.   It is a part of the case stated not to be denied, that such representation and promise were made, and the court might legitimately infer, from the admission, that this promise and representation were the only inducements to (the consideration for) the promise by the defendants.   A plaintiff cannot admit a *fact,* and then insist that there must be written proof of it, or it is no fact in the case.

No doubt it is a rule that written contracts are not to be added to or varied by oral proof; but it is well settled that

there are exceptions to this rule, and if this had been a controversy between two individuals, and the plaintiff admitted that he made this representation and promise, can it be questioned that those, who had to decide the controversy, might legitimately conclude, that such a case was within one or more of these exceptions, and that parol testimony was admissible to contradict or to avoid such a contract.

This misrepresentation and promise, however, was made by individuals, officers of the Company indeed, but who, in taking and procuring these subscriptions, were but agents of the plaintiffs, and *non constat* that they had any authority to make any such representation, or to enter into any contract in regard to the manner in which the subscriptions to the stock were to be paid. All of this would be entitled to consideration, if these subscribers were the plaintiffs, suing the Company for refusing to them the shares of stock, to which their subscriptions entitled them upon tendering in payment *Tide Water Canal* stock.

We are now to assume that this was a part of the contract. It may have been made a part of the contract without authority, and because of this the plaintiffs may not be bound to fulfil that contract; but surely the plaintiff ought not to disavow the act of its agent in a suit brought to enforce the contract made by that agent. The defendant is not bound to pay in gold and silver that which, it was the understanding of the parties actually contracting, should be paid in *Tide Water Canal* stock. So long, then, as the defendants are passive, do not claim a fulfilment of this contract, so long the plaintiffs ought not to complain while unwilling that the contract should be executed, as those who made it, must have understood it.

It will not be denied, that arguments entitled to consideration may be urged in opposition to this reasoning. We ought not, however, to forget, that the charter before us is the charter of a sister State, and its own courts are to be deemed the soundest expounders of its own charters and laws. No one can read the case of *James McConahy vs. The Centre and Kishacoquillas Turnpike Road Company,* 1 *Penn. Rep.* 426, without

7    v.6

the most entire conviction that in that State, this would be a defence in this action. Those, then, who are supposed to have a right to complain, became interested in this work with a knowledge of the charter, and of the interpretation of it in their State; that of such a defence they might have availed themselves, and therefore they have no right to complain that others who have been deceived by the representations and promises of the " committee," should claim the benefit of the decisions of the Supreme Court of *Pennsylvania*.

Without then examining other objections to the plaintiffs' recovery in this case, this judgment is affirmed.

**JUDGMENT AFFIRMED.**