(Decided 1st March, 1877.)

---

# WILLIAM G. SCARLETT *vs.* THE ACADEMY OF MUSIC OF BALTIMORE CITY.

*Exceptions to Evidence—Action against a subscriber to stock in a Corporation to recover an assessment on the amount subscribed—Admissibility of parol evidence to vary the terms of subscription—Sufficiency of notice of assessment—Misnomer—Agency—Construction of contract of subscription.*

Where an exception states that it was taken to the admissibility of certain evidence offered in the case, although it does not state what action was taken by the Court below upon the exception, it may be assumed that the exception was overruled and the evidence admitted.

Scarlett *vs.* The Academy of Music.

Where an exception was taken to all the evidence offered, and *especially* to a specified portion of it; and there was no question as to the admissibility of any but that part specially objected to, all except that being clearly admissible. HELD:

That there was no error in overruling the objection to the whole.

In an action by the Academy of Music of Baltimore City, a body corporate, to recover from a subscriber to its stock an assessment or call on the shares subscribed by him, it appeared in evidence that D. was a well known merchant of Baltimore, who with others had undertaken the task of procuring subscribers to said stock, and as such being himself a subscriber and stockholder, had obtained the signature of the defendant to the contract of subscription given in evidence. The defendant offered in evidence certain representations made by D., under which he claimed to be released from liability under his subscription. On objection to the admissibility of this evidence, it was HELD:

1st. That generally parol representations or agreements made at the time of subscribing for stock are inadmissible and void unless fraud is shown.

2nd. That the defendant not having added in writing to his signature, the terms of the representations, on the terms of which he claimed to have made his subscription, he cannot be allowed to add by parol testimony, other conditions to the terms of his written contract.

The evidence showed that the board of directors of said corporation, on the 7th of October, 1870, passed a resolution, that in case the committee previously appointed for that purpose, should conclude the purchase of a site for the building, the treasurer should notify the subscribers, that the first instalment of forty per cent. would be payable on a day to be fixed by the president, within thirty days thereafter, at the F. & M. Bank, and at the meeting of the board on the 31st of October, 1870, the committee reported the purchase, and the treasurer reported that he *had called* the assessment *as directed,* payable on the 10th of November, following. The notice of this call purporting to have been signed by the treasurer, was in effect as follows: "The stockholders of the Academy of Music of Baltimore City, are hereby notified that the first instalment of forty per cent. will be due and payable on the 10th inst., (to-morrow,) at the National Farmers' and Merchants' Bank," and it was proved that this notice was published in a newspaper printed in Baltimore City, on the 9th and 10th of November, 1870. HELD:

1st. That from this, and the other evidence in the case, it was competent for the jury to find that the call was duly made by the board of directors, that C. was the then secretary of the corporation, and was duly authorized to

give the newspaper notice of the call, that the time and place of payment was fixed and designated by the board of directors, and that such designation of time and place was in accordance with the resolution of the board of the 7th of October, 1870.

2nd. That under section 65 of the Act of 1868, ch. 471, which is substantially a re-enactment of sec. 49 of Art. 26 of the Code, it is immaterial whether the notice by publication required by those sections to entitle a corporation to sue its subscribers for assessments, be published for only one or for any number of days before the time of payment mentioned in it.

3rd. That all that the law requires, is that the notice shall be given by publication in a newspaper printed nearest the place where the principal office of the corporation is located, and one such publication before the day fixed for payment is sufficient.

By the terms of the contract of subscription which the defendant signed, he agreed to subscribe for stock in the "Baltimore Academy of Music." The corporate name of the plaintiff was, "The Academy of Music of Baltimore City," and the declaration averred that the "Baltimore Academy of Music" mentioned in the contract was the plaintiff, and that the contract was intended to be, and was in fact, made with the plaintiff. The proof showed that there was no other corporation in the City of Baltimore, which could possibly set up any pretence to this subscription, that all the subscriptions were taken like this in the name of the "Baltimore Academy of Music," and that when the enterprise was started it was commonly known by that name. HELD:

1st. That this was quite sufficient to authorize the jury to find the averments of the declaration to be true, and that the defendant in fact subscribed, and in fact intended to subscribe for shares of the capital stock of the plaintiff, under the name of the "Baltimore Academy of Music."

2nd. That the obligation of the defendant rested upon the terms of the *contract*, and it matters not whether the person who solicited him to sign it, was a mere volunteer in obtaining subscriptions, or was expressly authorized so to do by the corporation.

The condition of the subscription was, that it was "not to be binding until stock amounting in the aggregate at par, to $200,000, shall be subscribed." HELD:

That the true construction of this condition, was that the subscriptions should be binding on every subscriber when that sum was subscribed, and the amount to be subscribed by each one, whether he might be the party sued or not, was to be included in making up the aggregate amount.

APPEAL from the Superior Court of Baltimore City.

The nature of this case and of the *first, second* and *third exceptions* is stated in the opinion of the Court.

*Fourth Exception.*—The evidence being concluded, the plaintiff offered the following prayer :

If the jury believe that the defendant subscribed for ten shares of the capital stock of the plaintiff, under the name of the "Baltimore Academy of Music," by signing the contract of subscription offered in evidence, and that two hundred thousand dollars of said stock was subscribed for before the instalment sued for in the declaration in this cause was called in, and if they shall further find that the said instalment was called in, and that the notice thereof offered in evidence in this cause was published in the "Baltimore American," a newspaper published in the City of Baltimore, more than ninety days before the institution of this suit, and that the principal office of the plaintiff was located in said City of Baltimore, and that said instalment has not nor has any part of it, been paid by the defendant to the plaintiff, then the plaintiff is entitled to recover the amount of said instalment, with interest in the discretion of the jury.

And the defendant offered the ten following prayers :

1. The defendant prays the Court to instruct the jury, that the notice by advertisement offered in evidence, is not in legal contemplation sufficient under the provisions of the Act of 1868, ch. 471, sec. 65.

2. That there is no evidence in this cause sufficient to establish that the call or assessment, sued for in this case, was duly made by the board of directors.

3. That there is not sufficient evidence in this cause that the corporation, plaintiff, duly appointed Mr. Cohen, treasurer of said corporation, prior to the 10th November, 1870, and that Mr. Cohen was duly authorized to give the newspaper notice offered in evidence, in manner and form as therein set forth.

4. That under section 65 of the Act of 1868, ch. 471, it was the duty of the board of directors to establish the time and place of payment of assessments made or ordered by said board of directors, and that there is no evidence in this cause of such designation of time of payment.

5. If the jury find that Mr. Cohen, in giving the newspaper notice, acted solely under the authority of the resolution of October 7th, 1870, then the notice given is insufficient to charge defendant in this case.

6. If the jury find that the paper-writing signed by the defendant for subscription for stock, was brought to him by Mr. Devries, as stated in the evidence, and that the defendant signed the same at the request of said Devries, then the plaintiff cannot recover in this case, because there is no evidence that said Devries was the agent of the plaintiff, or had any authority to bind the plaintiff in manner as in said paper set forth.

7. That in order to recover under the pleadings and evidence in this cause, the jury must find that the subscription contract of the defendant for stock, was made by him with the plaintiff, with knowledge and intent so to do on his part, and that there is no sufficient evidence of such facts in this cause to identify the Baltimore Academy of Music with the corporation, plaintiff, as within such knowledge and intent of the defendant.

8. The defendant prays the Court to instruct the jury, that if the jury find that defendant signed the paper-writing offered in evidence, as his subscription for stock as therein stated, then such paper so signed by the defendant, is not binding in law as a valid contract between the defendant and the plaintiff bringing this suit.

1st. Because the plaintiff in this suit is not named in the said contract, and is no party thereto.

2d. Because there is no evidence offered to the jury that the name of the defendant was obtained to said paper-writing, by authority of the plaintiff in this case, or that

plaintiff accepted the same price prior to the date of the call in this case.

9. If the jury find the signing by the defendant of the paper-writing offered in evidence as his agreement; to subscribe for stock, said agreement was upon condition that $200,000 therein spoken of, should be subscribed by others, exclusive of the subscriptions there mentioned, before the conditional subscriptions should be operative and binding on the parties signing said agreement.

10. The defendant prays the Court to instruct the jury, that there is no sufficient evidence that the board of directors did fix the 10th day of November, 1870, as the time for the payment of the first instalment of the subscription for stock mentioned in manner and form as required by law under their charter, as set forth in the amended declaration filed in this cause.

The Court (DOBBIN, J.,) granted the prayer of the plaintiff, and rejected all the prayers of the defendant. The defendant excepted.

The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ALVEY, J.

*Benjamin C. Barroll,* for the appellant.

The subscription in this case was not made in the name of this corporation plaintiff. The *narr.* avers that while this is true, yet it says that "The Baltimore Academy of Music" was intended to be, and was, in fact, "The Academy of Music of Baltimore City," the plaintiff aforesaid. That said contract was intended to be and was, in fact, made with the said plaintiff.

This covers the case in 13 *Md.*, 117 ; and one of the cases cited in that case, 5 *Halsted*, 323, from which I quote— "the misnomer of a corporation in a grant or obligation,

does not destroy or defeat the grant or obligation, nor prevent a recovery upon it in the true name, provided the corporation *designed* and *intended* by the parties to the instrument, be shown by proper and apt averments and proofs." 10 *New Hamp.*, 124; 3 *Md.*, 127. Now appellant complains that the question of design and intent was not fairly, if at all, put to the jury in the prayer of the plaintiff granted by the Court. The Court used this language in the instruction, "if the jury believe that the defendant subscribed for ten shares of the capital stock of the plaintiff, under the name of the 'Baltimore Academy of Music,' by signing the contract of subscription offered in evidence, &c." The Court makes the signing of the contract offered in evidence, the test and proof to the jury of the fact to be established. The signing of the contract was admitted, but the design and intent to contract with this corporation in so doing, was the fact to be submitted, and the absence of any proof of such design and intention, or even that defendant had the slightest knowledge of the existence of this corporation, was so apparent, that defendant offered his 7th prayer, which was refused because it required the finding by the jury, that Scarlett's contract was made with the plaintiff, with knowledge and intent so to do on his part—and that no evidence was offered by plaintiff showing such knowledge and intent. *The signing of the contract* proved nothing whatever as to *intent*, and the language of the plaintiff's prayer made the signing of the contract the only fact to be found by the jury, to establish a contract in law between Scarlett and this corporation. *Prima facie*, it is apparent from the contract itself, that the corporation was not one of the contracting parties—and it can only be made such, by showing *by competent evidence*, that Mr. Devries was acting for this corporation at the time he obtained the subscription, and that Scarlett intended to deal with this corporation, and in order to such intent, a knowledge of its existence as a

corporation is indispensable. The plaintiff's prayer does not cover this ground, and was well calculated to mislead the jury.

*Mr. D. was the agent of the corporation and made the representations at the time of subscription, as its inducement and as part of the transaction—in fact they were the inception of the transaction.* And when the respectable gentleman discovered that the statements which had been the inducement, had proved to be untrue, he sought Scarlett and cancelled the subscription. This cancellation by mutual assent, was as effective as if the subscription paper had then and there been torn up, and the attempt to enforce it against Scarlett is a gross fraud upon Scarlett, and a manifest wrong to the high-minded gentleman concerned. To confirm his action in the part which is beneficial to the corporation, and to disaffirm it in the part which makes against, cannot be allowed. The corporation take the unworthy ground that Mr. D. was authorized (by subsequent ratification of his act,) to procure a subscription, but that the corporation is not bound by representations honestly make to induce the subscription, and to cancel it when the inducement failed.

The contract signed by Scarlett, required him to pay fifty dollars per share in such instalments, and at such times as may be fixed by the board of directors.

How was the instalment in this case called for?

On October, 7th, 1870, the board resolved, (hypothetically,) in case the committee should conclude the purchase of a site, the treasurer is hereby directed to notify the subscribers of stock, that the first instalment thereon of 40 per cent., will be payable *on a day to be fixed by the president*, within thirty days thereafter, at the F. & M. Bank.

Now it is clear that the board delegated to the president, the fixing of the time of payment. *Delegata potestas non potest delegari.* This is not only a maxim of common sense, but of the common law.

The *narr.* in this case avers, that the board of directors did fix the tenth day of November, 1870, as the best time of payment of this instalment—this was a material averment, and was a fact to be found by the jury. Without such averment, the defendant could have demurred. Is it true? Has not the corporation plaintiff itself, proved that it is not true? Is not the day on which the instalment is to be paid, left first to the uncertainty of a purchase being concluded by a committee, and if concluded, then entirely to the discretion of the president. And stranger than all; is not the treasurer directed to notify the subscribers that the first instalment will be payable on a day to be fixed by the president, &c.? Did the board give the treasurer any other order or direction in the premises? And Mr. Lucas says: that so far as he knew, this resolution was the authority under which Mr. Cohen published the notice in the American. Does the newspaper notice in this case harmonize with the order given by the board of directors to its treasurer? How was this *call* of the treasurer made? He reported that he had called instalments as directed—he had fulfilled the duty—and his report was approved.

*The record book open before Court and jury, showed that he had given the notice by printed notices, through the post office, and one of said printed notices was pasted in said book, as the proof that he had so given the notice.*

By the 9th November, Cohen discovered that his notice, given and approved by the board, was illegal and worthless, and then resorted to the newspaper notice on his own authority—the authority under the resolution being exhausted—the board having ten days before approved his action of notice through the post office.

It is also to be noted, that the board of directors ordered by resolution, that the subscribers should have *thirty* days notice, whereas, the newspaper notice gave one day.

The question to be decided is, was this instalment duly called in and notified to the appellant?

(*a.*) The board could not delegate its power to the president in the manner set forth; and even if the board could do so, there is not a particle of evidence, that the president fixed any time or ever acted under the resolution in any manner whatever.

(*b.*) The treasurer did not give the notice contained in the resolution, as directed

(*c.*) The treasurer gave the official notice through the post office, and reported it to the board, and the *board approved what he had done.*

(*d.*) The board provided by resolution, that subscribers should have 30 days for payment after notice, and the newspaper notice only allowed one day.

*H. C. Kennard,* for the appellee.

The charter and contract were properly admitted in evidence, the latter being coupled by the evidence in the second bill of exceptions, with the appellee. That evidence showing beyond a doubt that the contract sued on was, in fact, made with the appellee. It has long been established law that when mistakes are made in the names of corporations, in contracts with them, the corporations suing in their true corporate names have been allowed to recover; the only requirement being that the declaration shall contain an averment identifying the plaintiff with the contracting corporation, as in this case. *Hagerstown Turnpike Road Co. vs. Creeger,* 5 *H. & J.,* 122; *N. Y. African Society vs. Varick,* 13 *Johns.,* 38; *Balto. Cemetery Co. vs. First Independent Church of Balto.,* 13 *Md.,* 123–6; *Newport Mechanics' Manfg. Co. vs. Starbird,* 10 *N. H.,* 124–5; *Medway Cotton Manf. vs. Fisher, Adams, &c.,* 10 *Mass.,* 368-9-70; *The Medford & Chillicothe Turnpike Co. vs. Brush,* 10 *Ohio,* 111-12-14-15; *Angell & Ames on Corporations, sec.* 647.

But, even if the variance was such as might prove fatal if availed of by demurrer or motion in arrest, it has been

cured by verdict and judgment in this case, which establish the identity, if the evidence, was not overwhelming to that point.

It being admitted that Mr. Cohen had died since the trial in the Baltimore City Court, it was competent to prove his testimony upon that trial by a witness who was present at that trial, and recollected what he had testified to, such evidence, being, from the necessities of the case, admissible, and never excluded except in the single case when the witness recollects only a part of what the deceased witness had testified to. The witness in this case was present during the whole trial, and had Mr. Cohen's testimony impressed upon his memory for the double reason, that he was counsel in the case, and that Mr. Cohen was the only witness examined upon that occasion. It will be seen, that the testimony so given covers the whole contract, and recites all the facts necessary to the recovery ; the witness, while saying that he recollects *substantially* what Mr. Cohen's testimony was, having detailed the *facts* testified to and not his *conclusions* from those facts, and that is all that the law requires. That is the word, "substantially" used by the witness, applied to the *language* of the deceased witness, not his *testimony*. And it cannot be contended that the contract sued on in this case is not the same contract, made between the same parties, as the contract sued on in the Baltimore City Court. The fact that the instalments sued for were different, cannot affect this principle, the *contract* being the thing regulating the right to recover any or all of the instalments. 1 *Taylor on Evidence, p.* 455, *sec.* 440 ; *Pyke vs. Crouch,* 1 *Lord Ray.,* 730 ; 1 *Greenleaf on Evidence, secs.* 163-4-5-6, (*n.* 1, *p.* 192 ;) *Phila. Wilm. & Balto. R. R. Co. vs. Howard,* 13 *How.,* 307, 334-35 ; *United States vs. McComb,* 5 *McLean,* 286 ; *Davis vs. State,* 17 *Ala.,* 354 ; *Black vs. Woodrow & Richardson,* 39 *Md.,* 219-20-21-22 ; *Garrott vs. Johnson,* 11 *Gill & J.,* 173-182-3-4 ; *Bowie vs. O'Neale,* 5 *H. & J.,* 231 ; *Calvert vs. Coxe,* 1 *Gill,* 116.

All of the testimony tending to identify the plaintiff in this case with the corporation named in the contract was not only admissible, but absolutely necessary, and that the newspaper notice, was properly admitted, and under the statute, Act of 1868, ch. 471, sec. 65, was one of the forms of notice specially required. *Hughes vs. Antietam Manf. Co.*, 34 *Md.*, 331-2 ; *Busey vs Hooper*, 35 *Md.*, 30-31 ; *Academy of Music vs. Scarlett*, 43 *Md.*, 203.

The offer to prove by Mr. Scarlett, the defendant, certain verbal representations alleged to have been made to him by Mr. Devries at the time of subscribing, for the purpose of changing the contract of subscription by interpolating into it provisions or conditions, materially at variance with the contract of subscription, was properly rejected, especially as it had been stated and not denied, that Mr. Devries was "not the agent of the appellee for the purpose of making any representations to bind it."

The law is so well established as to be elementary, that parol representations or agreements made at the time of subscribing for stock in a corporation, and inconsistent with the written terms of the subscription, are inadmissible, inoperative and void. In fact, any other ruling would open the gate for fraud upon all the other subscribers who acted in ignorance of such parol representations. 1 *Taylor on Evidence, p.* 401, *sec.* 372 ; 2 *Taylor on Evidence, p.* 980, *secs.* 1035-6 ; *Conn. & Pass. Rivers R. R. Co.*, 24 *Vt.*, 468-9, 476-7-8 ; *Piscataqua Ferry Co. vs. Jones*, 39 *N. H.*, 491-7 ; *Smith vs. Plank Road Co.*, 30 *Ala.*, (*N. S.*,) 651-2-6, 667 ; *Johnson vs. Crawfordsville R. R. Co.*, 11 *Ind.*, 280-4-5 ; *Thornburg vs. New Castle, &c. R. R. Co.*, 14 *Ind.*, 500, 501 ; 4 *Jones, N. C., (Law,)* 340-1-3-4-5 ; *Rives vs. Montgomery South Plank R. Co.*, 30 *Ala.*, 97-8-9 ; *East Turnpike Va. R. R. Co. vs. Wm. Gammon*, 5 *Sneed*, 567-9-70-1-2.

The plaintiff's prayer was properly granted. The suit was on a contract setting forth explicitly the terms

upon compliance with which the plaintiff, (appellee,) would be entitled to recover. This prayer simply asks the instruction that if the jury find that the plaintiff had complied with its part of this contract, and had given to the defendant the printed notice, it is entitled to recover. The sufficiency of this notice is the only question, and has been already decided by this Court. *Academy of Music vs. Scarlett,* 43 *Md.,* 203 ; *Hughes vs. Antietam Manf. Co.,* 34 *Md.,* 331-2.

The defendant's first prayer denies the sufficiency of this notice and was properly rejected. His second, third and fourth prayers ask for instructions directly in opposition to the evidence, and were properly refused. His fifth prayer states the proposition that the resolution of the board of directors, contained in the regular book of proceedings of the corporation, directing the treasurer to give to subscribers the newspaper notice offered in evidence, were not sufficient proof that he had authority to give the notice. It is hard to see how there could be any stronger or better evidence of his authority ; but in addition to this, we have the positive evidence of Mr. Cohen, that he had such authority ; and this prayer was properly refused. His sixth prayer involves the propriety of admitting the alleged parol representations to vary the contract of subscription and was properly rejected.

· The defendant's seventh and eighth prayers object to the sufficiency of the proof identifying the plaintiff with the "Baltimore Academy of Music," the name in which the contract was made, which would appear to be as complete as it possibly could be, and was decided by this Court, when this case was last before it. The second part of the eighth prayer involves the novel proposition that *Mr. Devries' authority,* and not the *contract,* is to regulate the rights of the parties to this suit. As the contract was made in the name of the plaintiff, and the plaintiff chose to adopt it, it would seem that Mr. Devries' authority

could not in any manner affect the right to recover, even if it was true, which it is not, that Mr. Devries had no authority to obtain the defendant's subscription. These two prayers were properly refused. The ninth prayer has already been passed upon by this Court; but even if it had not been, it totally disregards the evidence. The contract does not exclude the plaintiff's subscription in making up the $200,000, and it was properly refused. The tenth prayer must be disposed of by the action of this Court upon the second, third, and fourth prayers, and for the same reason was properly refused. If Mr. Cohen's testimony is admissible at all, which it clearly is, he says distinctly, that the "board of directors directed the first assessment to be called in in October, 1870, payable on 10th November, 1870, and that it was called in *as directed.*"

MILLER, J., delivered the opinion of the Court.

This is a suit by the appellee, a corporation incorporated under the general laws of this State authorizing the formation of corporations, against the appellant, a subscriber to its stock, to recover an assessment or call on the shares so subscribed. It is admitted the defendant subscribed for $500, or for ten shares at $50 each, by signing with others the following agreement:

"We, whose names are hereto written, agree to subscribe for stock, in the 'Baltimore Academy of Music,' to the amount set opposite our names respectively, and to pay for the same fifty dollars per share, the par value thereof, in such instalments, and at such times as may be fixed by the board of directors. This subscription however, not to be binding until stock amounting in the aggregate at par to two hundred thousand dollars shall be subscribed."

In the course of the trial three exceptions were taken to rulings upon the admissibility of evidence, and one to the

granting of the plaintiff's single prayer, and the rejection of the ten instructions asked for by the defendant. The questions thus presented are now before us for review.

1st. If the objection in the first exception had been confined to the admissibility of the testimony of Mr. Kennard as to what Mr. Cohen, a deceased witness, had testified to in a former suit between the same parties in Baltimore City Court, it would have presented a question of some difficulty. But it is obvious, the objection is not thus restricted. The exception begins by stating that the plaintiff *offered* in evidence its charter, the subscription contract signed by the defendant, the testimony of Kennard as to what Cohen had sworn to in the former case, and the record of the proceedings of the board of directors containing certain resolutions relating to the call upon subscribers for a first instalment (that for which this suit is brought) of forty per cent. on their subscriptions, and then it is stated, " to the admissibility of *all which* testimony alleged, and *especially* to the testimony of Mr. Cohen as delivered in Baltimore City Court, as proven on this trial by Mr. Kennard, defendant excepted." On this it is not even stated what ruling the Court made, but we may assume that the objection was overruled, and the testimony admitted. It is plain however, that the objection is to *all* the testimony thus offered ; for that is shown by the fact that special attention is called to *part* of it as well as by the general words " to all which testimony." There can be no question as to the admissibility of any of this testimony save that of Kennard, and all of it except that being clearly admissible, there was no error in overruling the objection to the whole. It has long been the settled practice of this Court that an appellant loses the advantage of his objection if any part of the evidence covered by the objection is admissible. *Budd vs. Brooke,* 2 *Gill,* 220 ; *Emory & Gault vs. Owings,* 3 *Md.,* 185 ; *Wright vs. Brown,* 5 *Md.,* 37 ; *Colvin vs. Warford,* 20 *Md.;*

387. The objection stated in the second exception is of the same character, and encounters the same fatal difficulty.

2nd. The third exception was taken to the refusal of the Court to allow the defendant to prove that when solicited to subscribe by Mr. Devries, he did so on the faith of certain representations made by the latter to the effect that the building would be built in a location on or near Baltimore street, convenient to the hotels and main thoroughfares, so that it would advance the interest of the Baltimore trade, by being an additional attraction to country merchants to come to Baltimore, and in that way would indirectly benefit all, and that all subscribers would be allowed an opportunity by the Academy to have a voice in deciding on a site for the building; that on these representations the defendant subscribed, and would not have done so without them; that none of these representations were fulfilled, and Mr. Devries thereupon called upon defendant, and told him that the representations made not having been fulfilled, he had the option to retain or to cancel his subscription, and defendant replied that he would not stand by his subscription, but consider it cancelled. As this was said in argument to be the main and substantial ground of defence, we have given it a careful consideration. It appears from the previous part of this exception, that Mr. Devries was a well known merchant of Baltimore, who, with others, had undertaken the task of procuring subscribers to take stock in an Academy of Music, to be built in that city for the public benefit, and as such, being himself a subscriber and stockholder, had obtained the defendant's signature to the contract given in evidence. When the defendant was about to detail the statements made to him by Devries, the plaintiff's counsel stated in open Court, that Mr. Devries was not the agent of the plaintiff, for the purpose of making any representations to bind the plaintiff, and it

does not appear that this statement of counsel was denied. There is certainly nothing to show that he had any authority from the corporation to make these alleged representations, or to release any subscriber from the obligation of his written contract of subscription, or that such representations were fraudulently made, or that there was any collusion between the plaintiff and Devries to defraud the defendant, by making or having them made. In support of the admissibility of this evidence, much reliance was placed upon the case of *Swatara Railroad Co. vs. Brune,* 6 *Gill,* 41. In that case, the subscribers, by the terms of the written subscription contract, agreed to pay $50 per share for the stock subscribed " in *such manner* and proportions, and at such times as shall be determined " by the company. It was then by *agreement* admitted that its president and treasurer were appointed by the company, a committee to come to Baltimore, and procure subscriptions for its stock, and that at the time the defendants subscribed, this committee represented to them that Tide Water Canal stock could be made available by the company, and would be taken at par by it in payment of any subscriptions to its stock, and that the defendants made their subscription, relying upon this representation and promise. The Court answer the objection, that the defendants, by setting up this defence, were attempting to contradict and vary the written contract by parol proof, in this way: " But it does not appear that if the defendants had been compelled to prove the undertaking and representation, they would have been obliged to resort to parol testimony. The fact then to be proved is admitted, and admitted perhaps, because of a knowledge that the defendants could have produced, if it was required, proof to which no such objection could be made. The evils to be apprehended from the admission of oral testimony, to add to or vary the written instrument cannot be argued *in this case.* A plaintiff cannot admit a *fact,* and then insist that

there must be written proof of it, or it is no fact in the case." A careful examination of that case has convinced us it is clearly distinguishable from this, and that what was there decided furnishes no guide for the determination of the question now under consideration. In *Angell & Ames on Corp., sec.* 531, it is stated as the result of the authorities, that " generally parol representations or agreements made at the time of subscribing for stock, are inadmissible and void, unless fraud is shown." This general rule, though some few cases may be found in apparent conflict with it, it is sustained by the decided weight of authority. Among the many other cases that might be cited in its support we refer to *Conn. & Pass. River Railroad Co. vs. Bailey,* 24 *Verm.,* 465 ; *Piscataqua Ferry Company vs. Jones,* 39 *New Hamp.,* 491 ; *Johnson vs. Crawfordsville Railroad Co.,* 9 *Ind.,* 280 ; *Thornburgh vs. Newcastle & Danville Railroad Co.,* 14 *Ind.,* 499 ; *Smith vs. Plank Road Co.,* 30 *Ala.,* 650 ; *Railroad Company vs. Leach,* 4 *Jones Law Rep.,* 340 ; *East Tennessee & Virginia Railroad Co., vs. Gammon,* 5 *Sneed,* 567. The facts in several of these cases bear a striking similarity to those in the present case. Thus in *Piscataqua Ferry Co. vs. Jones,* the written contract of subscription was in like terms, and it was proposed to prove by parol, that at the time the defendant subscribed, it was represented to him by the person, a member but not an officer of the corporation, soliciting the subscription, that the purpose of the corporation, was to build a *horse* ferry boat. In fact a *steam* ferry boat was afterwards built, and the enterprise proved unfortunate. The Court held this evidence entirely inadmissible, sustained the general rule, and assigned this very sensible reason why it should apply specially to cases for subscription for stock : " The defendant's putting upon paper an unconditional promise to pay, may have induced others not only to subscribe but to pay, and his attempts now to shield himself by this private understanding may be a fraud

upon others who may have thus been induced to subscribe and pay." Here the defendant's name was first on the subscription paper which he signed. It was quite competent for him to have added in writing to his signature, the terms of the representations on the faith of which he asserts he made the subscription. If he had done this, no after subscriber could have been misled or induced to subscribe by the fact of his subscription, without other conditions than those on the face of the paper itself. Not having done so, it seems to us to be a case in which the general rule is most appropriate, and that the defendant cannot be allowed to add by parol testimony, other conditions to the terms of his written contract. For these reasons we affirm the ruling excluding this testimony.

3rd. One of the questions raised by the instructions asked by the defendant, is whether there was sufficient notice given of the call upon the subscribers for the instalment sued for. It appears that the board of directors on the 7th October, 1870, passed a resolution that in case the committee previously appointed for that purpose, should conclude the purchase of a site for the building, the treasurer should notify the subscribers that the first instalment of forty per cent. will be payable on a day to be fixed by the president, within thirty days thereafter, at the Farmers' and Merchants' Bank, and that at the meeting of the board, on the 31st of October, 1870, the committee reported the purchase, and the treasurer reported that he *had called* the assessment as *directed*, payable on the 10th of November following. The notice of this call, purporting to be signed by the treasurer, was in effect as follows: "The stockholders of the Academy of Music of Baltimore City, are hereby notified that the first instalment of forty per cent., will be due and payable on the 10th inst., (tomorrow,) at the National Farmers' and Merchants' Bank," and it was proved that this notice was published in a newspaper printed in Baltimore City, on the 9th and 10th of

November, 1870. From this and other evidence contained
in the record, and which need not be stated at length, it
was, we think, clearly competent for the jury to find that
the call was duly made by the board of directors, that Mr.
Cohen was the then secretary of the corporation, and was
duly authorized to give the newspaper notice of the call,
that the time and place of payment was fixed and desig-
nated by the board of directors, and that such designation
of time and place, was in accordance with the resolution
of the board of the 7th of October, 1870, that is to say,
that the instalment called for was made payable at the
designated bank, on a day fixed by the president, within
thirty days after the contract of purchase of the site was
concluded by the committee. We do not mean to be
understood as saying that the finding of *all* these facts
was essential to a recovery in this case, but the fact that
there was sufficient evidence to authorize the jury so to
find, meets and answers the objections set up in several
of the instructions asked for by the defendant. Section 49
of Article 26 of the Code, was substantially re-enacted by
section 65 of the Act of 1868, ch. 471, and it has been
decided that the personal demand or notice by publication
required by each of these sections, is a condition precedent
to the right of a corporation to sue subscribers for assess-
ments. *Hughes vs. Antietam Manufacturing Co.*, 34 *Md.*,
316; *Scarlett vs. The Academy of Music*, 43 *Md.*, 203.
But there is nothing in either of them prescribing for
what time the notice, if given by advertisement, shall be
published before the day of payment. Each, however,
allows the period of ninety days after the notice has been
published for a stockholder to pay, before his stock can be
forfeited, or he can be sued on the call, and this is all the
indulgence the law gives to him. He is not required to
pay at the time of payment fixed by the notice at the peril
of forfeiting his stock, or of being sued on the assessment,
but has the liberal time of ninety days after publication of

the notice, within which he can avoid both forfeiture and suit by paying what is demanded of him. We are therefore of opinion it is immaterial whether the notice be published for only one, or for any number of days before the time of payment mentioned in it. All that the law requires is, that the notice shall be given by publication in a newspaper printed nearest the place where the principal office of the corporation is located, and one such publication before the day fixed for payment is sufficient. It follows there was no error in the rejection of the defendant's first, second, third, fourth, fifth and tenth prayers.

4th. By the terms of the contract which the defendant signed, the agreement is to subscribe for stock in the "Baltimore Academy of Music." The corporate name of the plaintiff is "The Academy of Music of Baltimore City." The declaration avers that the "Baltimore Academy of Music" mentioned in the contract was in fact the plaintiff, and that the contract was intended to be, and was in fact made with the plaintiff. As to the law on this subject there is no difficulty. It is well stated in *Angell & Ames on Corp.*, sec. 647. The name in the contract does not correspond exactly with the true corporate name of the plaintiff, but it does so substantially. The proof shows there was no other corporation in the City of Baltimore which could possibly set up any pretence to this subscription, and all the subscriptions to the plaintiff's were taken like this, in the name of the "Baltimore Academy of Music," and that when the enterprise was started it was commonly known by that name. This was quite sufficient to authorize the jury to find the averments of the declaration to be true, and that the defendant in fact subscribed and intended to subscribe for ten shares of the capital stock of the plaintiff, under the name of the "Baltimore Academy of Music," and the finding of this fact was left to the jury in terms sufficiently explicit, by the plaintiff's prayer. The further objection that the defendant was not bound by his

subscription, because Mr. Devries was not the agent of the plaintiff is wholly untenable. His obligation rests upon the terms of the *contract*, and it matters not whether Devries, who solicited him to sign it was a mere volunteer in obtaining subscriptions, or was expressly authorized so to do by the corporation. There was therefore no error in the rejection of the defendant's sixth, seventh and eighth prayers.

5th. The condition of the subscription is, that it is "not to be binding until stock amounting in the aggregate at par to $200,000 shall be subscribed," and it is contended that this means that that amount must be made up by subscriptions *other* than those on the paper which the defendant signed. This objection goes to the extent of saying that if the subscriptions on this paper had amounted to $200,000, no one of the subscribers thereto would be bound, unless the same amount had been subscribed on another paper by other parties. That is not, we think, the true construction of this condition. It means that the subscription shall be binding on every subscriber when that sum is subscribed, and the amount subscribed by each one, whether he may be the party sued for his subscription or not, is to be included in making up this aggregate amount. The defendant's ninth prayer was therefore properly rejected.

It does not appear from the record that any objection was taken at the trial to the plaintiff's prayer, which was granted, because of the assumption therein of any fact, and we cannot therefore, under Rule 4, regulating Appeals, (29 *Md.*, 2,) hold it defective for that reason. We find no error in the granting of it which would justify a reversal of the judgment.

*Judgment affirmed.*

(Decided 1st March, 1877.) ·